25055.   CITY OF ATLANTA v. AIRWAYS PARKING
COMPANY et al.

ARGUED FEBRUARY 10, 1969—DECIDED MARCH 6, 1969.

*Robert S. Wiggins, Henry L. Bowden, William R. Bassett,* for appellant.

*Arnall, Golden & Gregory, Cleburne E. Gregory, Jr., Paul H. Anderson,* for appellees.

MOBLEY, Justice. This appeal is from an order of the Superior Court of Fulton County granting an interlocutory injunction to Airways Parking Company on its cross action in the condemnation proceeding brought by the City of Atlanta seeking to condemn a portion of the rights of Airways Parking Company under its contract with the city. The city is the owner in fee of the property. The contract entered into on January 27, 1961, pertained to the operation of open lot public parking at the Atlanta Municipal Airport, and the contract will expire November 14, 1971.

The condemnee asserts that the condemnation proceeding should be enjoined for the following reasons: It violates the constitutional inhibition against the impairment of the obligation of contracts. It does not give due notice, because of the inadequacy of the description of the property to be taken. The city has no authority to condemn the license of the condemnee. The city can not take the property, which is already devoted to a public use.

The order granting interlocutory injunction was entered after a consideration of the pleadings and the exhibits attached to the pleadings, which exhibits the parties stipulated might be considered as evidence.

■ The condemnee asserts that the condemnation sought violates Art. I, Sec. X, Par. I of the Constitution of the United States (*Code* § 1-134), and Art. I, Sec. III, Par. II of the Constitution of Georgia (*Code Ann.* § 2-302), prohibiting the passage of a law impairing the obligation of contracts. The condemnee concedes that the sovereign power to take private property for public use can not be contracted away, but contends that the power to take does not include the power to change the obligations of a contract, or to rewrite its provisions without the consent of the other contracting party.

In Pennsylvania Hospital v. City of Philadelphia, 245 U. S. 20 (38 SC 35, 62 LE 124) it was held: "So vital a governmental

power as the power, upon just compensation, to take private property for public use, cannot be divested through contracts made by the State. Such contracts are not within the protection of the contract clause of the Constitution."

In 26 AmJur2d 738, Eminent Domain, § 81, it is said: "Contracts may be condemned. The power of eminent domain is paramount to the right secured by the constitutional obligation of contract clause, and its exercise in no wise interferes with the inviolability of contracts. In other words, the constitutional inhibition on any state law impairing the obligation of contracts is not a limitation on the power of eminent domain. The obligation of a contract is not impaired when it is appropriated to a public use and compensation made therefor. Such an exertion of power neither challenges its validity nor impairs its obligation. It is a taking, and not an impairment of its obligation."

In *Trustees Atlanta University v. City of Atlanta*, 93 Ga. 468 (1) (21 SE 74), this court held that the city could condemn "the whole or any part of the right of a private corporation to maintain one or more bridges across one of the public streets . . . although the easement sought to be appropriated or extinguished in whole or in part may be grounded upon a contract heretofore made between the city as one party and the private corporation as the other, . . ." In the opinion (at page 476) it was stated: "It is no revocation or violation of the grant under which private property is held to take it for public use, on making adequate compensation to the owner. On the contrary, the proceeding to condemn and take, if it has self-consistency, concedes the sacredness of the grant and the creation thereby of the attributes of ownership which can arise by inviolable contract. Reduced to its essence, a constitutional exercise of the right of eminent domain is not deprivation of property but a compulsory exchange of one kind of property for another, or rather a compulsory sale of property for money, an exchange of equivalent values." See also *Young v. McKenzie*, 3 Ga. 31 (2).

The condemnee concedes that the city could condemn all of its contract rights, if needed. However, the city would not be authorized to take more of the property rights of the condemnee than necessary for airport purposes. The condemnation notice

indicates that the condemnee will be permitted to operate the parking building after some portion of the structure is completed, or to operate the completed structure, if it is finished prior to the termination of the contract. This would not mean that the condemnee could be required to assume obligations not voluntarily undertaken by it under the terms of its contract. The condemnation proceeding can take away rights under a contract, but it can not impose new obligations.

The condemnation proceeding provides a means of compulsory exchange of rights under the contract for a monetary judgment. The condemnation of a portion of the rights of the condemnee under its contract with the city does not violate the provisions of the State and Federal Constitutions prohibiting the passage of a law impairing the obligation of contracts.

■ The condemnee contends that the City of Atlanta does not have authority to acquire, by the exercise of the power of eminent domain, any of its contractual rights in the property covered by the contract, because the city owns the fee in the property, and the rights sought to be condemned are not being condemned as an incident of obtaining real property, but in a proceeding where no interest in realty is being acquired.

In *Henson v. Airways Service, Inc.*, 220 Ga. 44 (136 SE2d 747), in determining whether a similar contract conveyed a taxable interest in land, this court held that the corporation obtained a mere license to use the real property, which would not be taxable as an interest in real property. The condemnee relies on this case as authority for its contention that the contract it holds is not an interest in real property.

By amendment to the charter of the City of Atlanta (Ga. L. 1955, pp. 3023, 3025), the city is granted "full power and authority to acquire, by the exercise of the power of eminent domain, any real property or any interest therein, within or without the limits of said city, which it may deem necessary for any corporate purpose." The condemnee asserts that, if this special statute vests in the city broader powers to condemn for airport purposes than are granted to all municipalities in the State by the Uniform Airports Law ('Code Ch. 11-2), it would be invalid as special legislation in conflict with a general law on the same

subject. However, it is our opinion that *Code Ch.* 11-2, as amended, gives broader powers in condemning property for airport purposes than the charter provision in regard to condemnation by the City of Atlanta.

*Code* § 11-203 provides: "Private property needed by a county, municipality, or other political subdivision for an airport or landing field or for the expansion of an airport or landing field, may be acquired by grant, purchase, lease, or other means, if such political subdivision is able to agree with the owners of said property on the terms of such acquisition, and otherwise by condemnation in the manner provided by the law under which such political subdivision is authorized to acquire real property for public purposes." This section plainly authorizes the acquisition of "private property" by condemnation *in the manner* in which a political subdivision is authorized to acquire real property. *Code Ch.* 11-2, as amended, applies to all municipalities, counties, and other political subdivisions of the State, and would, in effect, become a part of the charter of all municipalities of the State. *DeJarnette v. Hospital Authority of Albany,* 195 Ga. 189 (5) (23 SE2d 716) ; *Reed v. City of Smyrna,* 201 Ga. 228 (7) (39 SE2d 668). *Code* § 11-203 authorizes the City of Atlanta to condemn "private property," whether real or personal, for airport expansion.

■ The condemnee contends that the city is seeking to condemn property devoted to a public use for another inconsistent use which will practically extinguish the present public use. The property is now an open lot parking area in connection with the airport. The city seeks to construct a four-level parking building on two thirds of the ground area of the parking lot, with some of the space being reserved for ticket-counter facilities, baggage reception and passenger service areas, and space for taxicabs, limousines, and similar vehicles.

The cases cited by the condemnee in support of this are: *City Council of Augusta v. Georgia R. &c. Co.,* 98 Ga. 161 (26 SE 499) ; *Town of Poulan v. Atlantic C. L. R. Co.,* 123 Ga. 605 (51 SE 657) ; *Ga. Northern R. Co. v. City of Moultrie,* 163 Ga. 513 (136 SE 415) ; *Elberton Southern R. Co. v. State Hwy. Dept.,* 211 Ga. 838 (89 SE2d 645) ; and *Ga. Southern &c. R. Co. v.*

■

*City of Warner Robins,* 107 Ga. App. 370 (130 SE2d 151). These cases all recognize the rule that one exercising a delegated power of eminent domain may not condemn property already devoted to a public use unless power to do so is conferred in express terms, or by necessary implication, and in determining whether or not such power has been conferred, the rule of strict construction will be applied. These cases all involve instances where one entity, having power of eminent domain, attempts to take property from another entity also having such power, as, for instance, a municipality and a railroad company.

The City of Atlanta already owns the fee in this property for airport purposes, and has contracted with the condemnee for the operation of a parking lot for members of the public using the airport facilities. The use for which the city seeks to condemn the contractual rights of the condemnee is but an expanded utilization of the property for the same use for which it was originally acquired, airport use. It is not the particular utilization of some segment of the property that is the "use" referred to in the rule asserted by the condemnee, but the comprehensive purpose for which the property is acquired. The condemnation sought by the city does not contravene the rule announced in the cases cited by the condemnee.

■ In the foregoing divisions we have dealt with the contentions of the condemnee which pertain to the right of the city to condemn the contract rights of the condemnee. We finally deal with the contention that notice given by the city to the condemnee of the property rights sought to be condemned is too vague and indefinite to enable the condemnee to establish what damages it will sustain, and it is thus denied due process of law.

The condemnation proceeding was brought under Ga. L. 1957, pp. 387-397, as amended (*Code Ann.* § 36-601a et seq.). It is provided in § 36-604a that the petition shall set forth "the property or properties, the interest or interests therein, which are sought to be taken or damaged; . . ." Construing similar language in *Code* § 36-313, this court has held that the notice of an intention to condemn an easement in property must describe the easement to be acquired with the same degree of definiteness as is required in a deed to land. *Glidden Co. v.*

*City of Collins*, 189 Ga. 656 (7 SE2d 266); *Gunn v. Ga. Power Co.*, 205 Ga. 85 (52 SE2d 449). In *B. & W. Hen Farm, Inc. v. Ga. Power Co.*, 222 Ga. 830 (2) (152 SE2d 841), it was held that a notice of the intention to acquire the right of ingress and egress on and over the condemnee's land, described only as being "the nearest and most practical route, using existing roads as far as possible" to and from the strip on which the condemnor sought to locate its transmission line, was wholly insufficient.

The condemnation notice in the present case describes with particularity the whole tract of land in which the condemnee owns contractual rights. The city does not seek to acquire this whole tract free from the contractual rights, but plans to construct a building on a portion of the property leaving the condemnee to utilize the remainder of the area for parking during the construction period. The rights and easements desired are the following: (a) To construct "on the southerly two-thirds portion" of the property a parking structure of four levels, providing approximately 3,885 parking spaces, together with certain ticket-counter facilities, baggage reception and other passenger service areas, and ready-area space for taxicabs, limousines, and similar vehicles, as depicted on drawings attached. (b) Prior to construction to go upon the premises from time to time with such equipment as reasonably may be necessary to effect borings and soil testings in connection with the proposed construction, and for such purposes to occupy such area or areas for such time as reasonably may be necessary, not more than 24 spaces to be blocked at any one time, and the maximum total time required not to exceed 24 days. (c) Exclusive possession at any one time during the construction of the parking structure of an area comprising not more than one half of the total parking spaces presently available on the premises. (d) Exclusive possession of the area designated in (c) above, or such portion thereof as may be needed, "for a period or periods which in the aggregate shall not exceed 18 months." (e) Exclusive occupation and control by the city, or its assignee or designee, for the period from the commencement of the construction until the expiration of the condemnee's contract, of 24,000 square feet on the bridge level of the parking structure for additional

ticket-counter, baggage reception, and other passenger service facilities. (f) Exclusive occupation and control as in (e) above of not over 200,000 square feet of area on the lower level of the parking structure at the southerly end, for use as a ready area for buses, taxicabs, and similar service vehicles. (g) To remove, rearrange, and replace the streets, passageways, curbs, entrances and exits, gates, ticket-spitters, cash registers, and like equipment in order to provide for the maintenance and utilization of the maximum number of parking spaces which can be made available for use by the public, both during and after the construction of the parking structure. (h) To install in the structure all such cable, wiring, machinery, automatic and electronic equipment, cash registers, gates, space marking, and other property and equipment necessary for the efficient operation of the facility.

The drawing attached to the condemnation petition depicts the floor plans of the four levels of the building, but does not show where the building will be located in the larger tract described, which is the entire parking area. The portion of the property on which the building will be constructed is not described by metes and bounds. Knowledge of the time element in the construction is extremely important to the condemnee since it has a contract which will terminate in November, 1971. It is stated that the structure will eventually occupy two thirds of the ground area of the parking lot, but exclusive possession at any one time is sought of only one-half of the parking area, and the condemnee is not advised of any particular area that will be occupied at any time. The proposed time of commencement of the structure is not given. The time for completion is stated as "a period or periods which in the aggregate shall not exceed 18 months." Under this language the building might be completed and in operation prior to the termination of the condemnee's contract, or it might be in the first stages of construction, since only the "aggregate" period or periods are limited to 18 months, and these periods might be interrupted and extend for an indefinite time. The city further seeks the unlimited right to remove, rearrange, and replace the streets, passageways, curbs, entrances and exits, etc., of the condemnee, and no description is attempted of the time and place of these operations.

While a condemnee might later recover in equity an amount for damages sustained by a condemnation proceeding where the condemnee is prevented from proving all of his damages by a mutual mistake, unmixed with negligence, or fraudulent conduct of the condemnor, unmixed with negligence of the condemnee, it is the general rule that the assessment of compensation for property taken covers all damages, whether foreseen or not, which result from a proper construction. *Whipple v. County of Houston,* 214 Ga. 532 (1, 2) (105 SE2d 898); *Woodside v. Fulton County,* 223 Ga. 316 (1) (155 SE2d 404). The condemnee in the present case cannot rely on obtaining further damages in a subsequent action to compensate for the rights and easements which the city specifies it will acquire in this condemnation proceeding.

The notice in the present case was inadequate to give the condemnee sufficient notice of the property rights to be taken, in order that it might prove the damages it will sustain, and the trial judge did not err, for this reason, in granting the interlocutory injunction.

*Judgment affirmed. All the Justices concur.*