### 29904. DeKALB COUNTY v. UNITED FAMILY LIFE INSURANCE COMPANY.

JORDAN, Justice.

This is a certiorari to the Court of Appeals. *United Family Life Ins. Co. v. DeKalb County,* 134 Ga. App. 1 (213 SE2d 123). In July, 1974, DeKalb County brought a land condemnation proceeding to acquire land necessary for construction of a public transportation system by the Metropolitan Atlanta Rapid Transit Authority. United Family Life Insurance Company, one of the condemnees, held a deed to secure debt on the condemned property. The deed to secure debt was evidenced by a promissory note to United Family executed by Ralph E. Berger, who was also named as a condemnee. The promissory note made the

following provision with regard to prepayment of interest: "No right to prepay for five years; privilege to prepay in full or in part beginning the fifth year at a 5% penalty declining 1/2 of 1%. Penalty shall be calculated on the unpaid principal balance of the loan. In any case, thirty days notice of intent to make a prepayment must be given in writing."

As of August 1, 1974, the prepayment penalty which would be due should the mortgagor choose to prepay under the circumstances contemplated in the promissory note amounted to $48,162.44. The principal amount of the note, dated October 28, 1971, was $225,000.

United Family claimed the prepayment penalty as an element of damage in the condemnation. Such award was refused by the special master. United Family filed exceptions in DeKalb Superior Court, wherein the special master's award was upheld. Upon appeal, the Court of Appeals ruled the prepayment interest penalty was an element of damage under the Georgia Relocation Assistance and Land Acquisition Policy Act of 1973 (Ga. L. 1973, p. 512; Code Ann. § 99-3701 et seq.) if such award would be reimbursed by the federal government. We reverse.

Article I, Sec. III, Par. I of the 1945 Constitution mandates that just and adequate compensation must be paid before private property may be taken by the state. This mandate is declaratory of common law principle that property may not be taken without compensation. *Young v. McKenzie,* 3 Ga. 31 (1847).

Just and adequate compensation has been judicially defined in Georgia as the fair market value of the property at the time of the taking. *State Hwy. Bd. v. Warthen,* 54 Ga. App. 759 (189 SE 76) (1936); *State Hwy. Dept. v. Howell,* 119 Ga. App. 606 (168 SE2d 213) (1969).

Unlike other jurisdictions, Georgia does not statutorily restrict compensable elements of damages in eminent domain proceedings, but instead relies on a system of case-by-case adjudication. This was referred to in footnote 1 in the Colorado case of Auraria Businessmen Against Confiscation, Inc. v. Denver Urban Renewal Authority, (Colo.) 517 P2d 845 (1974), citing *Bowers v. Fulton County,* 227 Ga. 814 (183 SE2d 347) (1971).

United Family contends that the nonpayment of the prepayment penalty not only amounts to failure of just and adequate compensation, but also works a constitutionally proscribed impairment of contract. A contract is obviously a property right, and the sort of taking or damaging which poses the constitutional requirement of just and adequate compensation may be any species of property. *Woodside v. City of Atlanta,* 214 Ga. 75, 83 (103 SE2d 108) (1959). As property, contracts may be condemned. *City of Atlanta v. Airways Parking Co.,* 225 Ga. 173, 175 (167 SE2d 145) (1969). There is thus no need to reach the constitutional issue of impairment of contract, because United Family's right to money from its mortgages is by operation of law transmuted to a claim for money paid in the condemnation process.

The measure of value of the contractual right condemned was considered by the Florida court in Associated Schools v. Dade County, —(Fla.)— 209 S2d 489 (1968). The District Court of Appeals held therein that since Florida had previously held in Shavers v. Duval County, —(Fla.)— 73 S2d 684 (1954), that when there was no right to prepayment, a mortgagee was not entitled to receive an amount from the proceeds equal to his unearned interest; he therefore would not be entitled to prepayment penalties. Both Associated Schools and Shavers were cited with approval by the Appellate Division of the Superior Court of New Jersey in Jala Corp. v. Berkeley Savings &c. Assn., 104 N. J. 394, supra (250 A2d 150) (1969). Jala involved a factual situation quite similar to the one at bar. The court in Jala dismissed as "frivolous" the contention that the prepayment charge might be considered as a loss incidental to the condemnation. Jala, p. 402. The New Jersey court also quoted with approval the following excerpt from Shavers: "It would be unfair and contrary to the principles of equity and good conscience for the mortgagee to have the principal of the note and the free use and enjoyment thereof and at the same time require the mortgagor or the condemnor to pay it interest on the same principal for no other reason than that a naked legal provision of the note and mortgage, at the time it was executed, required that the mortgagor should do so." Jala, p. 399.

At this point it should be noted that the promissory note made by Berger was dated October 28, 1971. The instrument expressly stated that there was to be no right to prepayment for five years. The property was condemned less than five years from the making of the note. Therefore, this fact situation is peculiarly analogous to the one considered in Chestnut Corp. v. Bankers Bond & Mtg. Co., 395 Pa. 153 (149 A2d 48) (1959).

In Chestnut, the question was if when a mortgaged building was destroyed by fire, the mortgagee was entitled to recover a prepayment premium out of the proceeds of the fire insurance. The Pennsylvania court reasoned its decision on the voluntariness of the prepayment, and the ability of the mortgagee to provide for such a contingency in the debt instrument: "Neither the bond nor the mortgage specifically or expressly provided for the exact situation which has arisen, namely, a prepayment of the entire principal loan with interest during the premium period, due not to a voluntary election of prepayment but to a fire. If defendant (the obligee-mortgagee) believed it should be entitled to the premium under the circumstances it could easily and should have so provided in the bond and/or mortgage. In the absence of such a provision we believe that defendant who received the entire unpaid principal and accrued interest of its mortgage is not entitled to the prepayment premium." P. 156.

This reasoning is applicable to the case at bar because, due to the express term of the note, it cannot be contended that United Family is claiming a premium for the exercise of a right bargained for with Berger. Berger, in fact, had no right whatsoever to prepay for a period of five years from the date of the making of the note.

Since United Family cannot claim the premium as the negotiated price for the sale of a right, it must be considered what, if any, economic loss it has suffered. This consideration is based on the theory that the condemnation has deprived United Family of a valuable property right. However, since there is no showing in the record that United Family cannot reinvest its funds at an interest rate equivalent to or higher than the interest rate provided for in the mortgage, it has suffered no real dam-

age. 44 Tex. L. Rev. 1534. Therefore, United Family has suffered no damage which could not have been provided for by the contract, and, in fact, shows no real economic loss. To allow award of the prepayment penalty would be to allow speculative damages, since it is unforeseeable whether or not the mortgagor would ever choose to prepay as provided for in the contract. It is basic that in case of breach of contract, for whatever reason, justice requires nothing more than compensation measured by the amount of harm suffered. 5 Corbin on Contracts 280 (1951).

United Family argues that the validity of prepayment penalty costs is specifically recognized by Public Law 91-646, enacted in the first session of the 91st Congress on January 2, 1971, and is made a part of the costs of acquisition. The Court of Appeals accepted this argument when it stated in its decision that the Georgia Relocation Assistance and Land Acquisition Policy Act of 1973 (Ga. L. 1973, pp. 512, 513; Code Ann. § 99-3702 et seq.) controlled its decision. The Georgia Act provides in part as follows (Code § 99-3705): "The Several Public Entities are hereby authorized to and shall make or approve the payments required by Section 305(2) of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Public Law 91-646, 91st Congress, approved January 2, 1971, for expenses incident to the transfer of real property acquired by any of Several Public Entities, prepayment of mortgage penalties, and a pro rata portion of real property taxes on real property acquired by any of the Several Public Entities from any person, family, business, farm operation, or nonprofit organization displaced by Federal-aid public works projects in the State, the costs of which are now or hereafter financed in whole or in part from federal funds allocated to any of the Several Public Entities."

Thus, the issue arises as to whether or not the Georgia Acquisition Act requires or permits recovery of prepayment penalties as an item of damages when federal funds are involved, although such damages would not be an item of damages under Georgia law. A similar question was posed in the case of Beaird-Poulan, Inc. v. Dept. of

Highways, State of La., 362 FSupp. 547 (W. D. La., 1973). Louisiana law at the time of condemnation did not, according to the district court, allow damages for costs of moving or relocation when private property was expropriated. Beaird-Poulan, supra, p. 549.

Section 210 of the Federal Acquisition Act provides for costs of relocation. Thus, the question was squarely presented as to whether the Federal Acquisition Act or the law of the State of Louisiana would set the measure of damages. Discussing such damages, the court said: "They are not payments which the Federal Government itself would owe as damages or as just compensation if it were condemning or otherwise acquiring property for a highway, nor are these required payments which a state must bear when it expropriates property. These payments are gratuities made from the benevolence of Congress in its handling of the Federal Highway Fund. Acquisition of property for highway rights-of-way by the Department of Highways of Louisiana is made under the laws of that state and not under federal law. [Cit.] *That Department is required to pay compensation only as defined by Louisiana's law and jurisprudence.*" P. 551. (Emphasis supplied.)

Under Louisiana jurisprudence, moving or relocation costs have been held to be noncompensable as they are damnum absque injuria. Beaird-Poulan, supra, p. 551.

Georgia jurisprudence will similarly set the measure of damages for property condemned in Georgia under the Georgia Land Acquisition Act, which Act states explicitly (Code Ann. § 99-3710) that no element of value or damage is created by the Act.

As stated by the Court of Appeals, there is no Georgia case holding that prepayment penalties are compensable elements of damage in an eminent domain proceeding. This being so, the following passage from the Federal Register is instructive: "Effect upon property acquisition. (a) The provisions of this Subpart D [Real Property Acquisition] create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation. (b) Nothing in these regulations shall be construed as creating in any

condemnation proceedings brought under the power of eminent domain *any element of value or of damage not in existence immediately prior to January 2, 1971,* the date of enactment of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970." (Emphasis supplied.) 24 CFR § 42.150.

In Denver Urban Renewal Authority v. Marshall Mfg. Co., (Colo.) 532 P2d 746 (1975), the court stated at p. 748: "The relocation statutes are separate from the eminent domain statutes. They provide, in part, for reimbursement to displaced business of moving expenses and replacement expenses in federally assisted projects. They do not create additional elements compensable under eminent domain laws, but do provide supplemental assistance for particular losses incurred by reason of dislocation."

This issue was also discussed by the Colorado court in Auraria Businessmen Against Confiscation, Inc. v. Denver Urban Renewal Authority, supra, in discussing a Colorado statute similar to ours: ". . . We do not construe Section 139-62-5 (11) as creating additional elements compensable under our eminent domain laws. Rather, its purpose is to provide supplemental assistance for particular losses incurred by reason of dislocation, in an effort to reduce the burden falling on the property owner whose property is condemned. Our attention has not been directed to anything in the federal or state constitutions which mandates compensation for those losses incidental to the dislocation, including goodwill and business projects, and we regard the supplemental payments to be statutory grants." Auraria, p. 848.

Were the Auraria situation to be presented in Georgia, the losses mentioned in the above quotation would be compensable under *Bowers.*

Moving expenses are not compensable elements of damage under Colorado law, as stated in Auraria. In Georgia, the *Bowers* decision states explicitly that such expenses are a compensable element of damage. By the same token, interest prepayment penalties are not compensable in Georgia, either statutorily or by case law. We therefore hold that compensable elements of damage are delimited by Georgia jurisprudence, and do not

include prepayment interest penalties.

*Judgment reversed. Gunter, Hall and Hill, JJ., and Judge Elmo Holt, concur. Nichols, C. J., and Undercofler, P. J., dissent. Ingram, J., disqualified.*

ARGUED JUNE 10, 1975 — DECIDED OCTOBER 16, 1975 — REHEARING DENIED OCTOBER 28, 1975.

*Harvey, Willard & Elliott, Wendell K. Willard, Huie, Brown & Ide, Tom Watson Brown, Charles N. Pursley, Jr.,* for appellant.

*Heyman & Sizemore, William H. Major,* for appellee.

UNDERCOFLER, Presiding Justice, dissenting.

In Georgia a ". . . secured indebtedness can not be paid in advance of maturity unless a prepayment privilege is written into the security deed or note." Pindar, Georgia Real Estate Law and Procedure, 1971, p. 804, § 21-47. As stated in *Cook v. Securities Inv. Co.,* 184 Ga. 544, 548 (192 SE 179) (1937), "Nor could the Home Owners Loan Corporation be compelled by the court through a receiver to accept the principal with interest to date only, since an order to this effect would impair the contract between it and the borrower, depriving the corporation of future interest for which it has contracted." The grantor in the security deed and note is required to make payment in accordance with the terms of these instruments. The obligation of these contracts can not be impaired by condemnation although they may be taken upon payment of just compensation. *City of Atlanta v. Airways Parking Co.,* 225 Ga. 173 (167 SE2d 145) (1969). See 16 CJS 1293, Constitutional Law, § 282. "If a court concludes that the mortgagor must pay the prepayment penalty, despite the condemnation, because of the contractual arrangement between the mortgagor and mortgagee or otherwise, it would appear that this element of loss should be passed along to the condemnor. The objective of payment of just compensation is said to be to place the condemnee in the same relative financial position he occupied prior to the taking. This can only be done if the prepayment penalty is not deducted from his award. Such a result can be justified

by virtue of the real property character of the mortgage and by virtue of the fact that the mortgagee is not pre-paying voluntarily, but only as an indirect consequence of the appropriation." 2 Nichols on Eminent Domain (1975), p. 5-215, § 5:741[4].