## 67285. CANADA WEST, LTD. et al. v. CITY OF ATLANTA et al.

BIRDSONG, Judge.

Condemnation. Canada West is the owner of an apartment complex in the city of Atlanta. Canada West purchased the apartment complex in 1979 with the express intent of converting the apartments to condominiums. At the time of the purchase, Canada West was aware of the proposed presence of an adjacent MARTA station and plans for construction of the rail line to run either on one side or the other of the complex or possibly through the complex. One month after the closing of the purchase, MARTA determined to run its rail line through the center of the apartment complex. Nevertheless, Canada West continued to complete all the preliminary work necessary for a legal conversion of the apartments to condominiums prior to the commencement of the extension of the rail line into the apartment grounds. Canada West entered into contracts with a number of potential purchasers for the apartments prior to conversion to condominiums. The decision was made by Canada West to withdraw all offers for sales because of the visual impact of the rail line construction and the financially depressing effect thereof on the proposed sales of the apartment units to be converted. All sales were withdrawn and delayed until after the completion of the MARTA line through the complex.

On July 22, 1981, the city of Atlanta, on behalf of MARTA, filed for condemnation for an easement and right of way through the middle of the apartment grounds with the underground tracks running directly under one of the several buildings utilized as an apartment building. The various property interests taken included a permanent easement for a tunnel to be used for the operation of the MARTA trains; a fee simple title to the one apartment building containing 36 two-bedroom apartments including a three-month easement for the purpose of demolishing and removing the building; and six temporary construction easements, consisting of two for an

18-month period and four for a period of six months each. It was undisputed that the highest and best use for the remaining 144 apartment units would be as condominiums.

Pursuant to the declaration of taking, the city initially deposited the sum of $953,800 as just and adequate compensation for the permanent and temporary takings. Following a successful appeal to a Special Master by Canada West, the city deposited an additional $371,200 for a total award of $1,325,000. Canada West, still being dissatisfied with the compensation, sought and obtained a jury trial. After a multiple day jury trial, the jury returned a verdict in the amount of $1,045,151.50. The trial court entered its judgment on that verdict and ordered Canada West to refund an excess sum of $276,519.70 to the city. Canada West filed this appeal enumerating 13 alleged errors, some of which are interrelated. *Held:*

1. In its first enumeration of error, Canada West urges the trial court erred in refusing to let Canada West establish by evidence or argue to the jury its existing below the market financing of its mortgages and the impact that refinancing by a putative purchaser would have on consequential damages. By offer of proof, Canada West showed it had first, second and third mortgages at 10% or less and that prevailing mortgage interest rates at the time of the condemnation were at about 20%. Canada West also showed that it had the unusual clause in its mortgages that allowed the mortgagee to accelerate the mortgages should the apartments be condemned and further that it was highly unlikely that the mortgagee would allow a purchaser to assume the loans at the lower interest rates but would seek either the prevailing rate at the time of the purchase or some higher rate than that prescribed in the existing mortgages. In contravention, the city of Atlanta showed that as of the time of the trial, the mortgagee had not invoked its power of accelerating the mortgages and that no actual sale of the property was in process inasmuch as Canada West had withdrawn all offers for sale.

In substance then, Canada West argues that the potential loss of favorable financing caused it consequential damage either directly or indirectly because the ultimate sale of the property would have to be refinanced at a rate in excess of the interest rate on the existing mortgages. We experience much difficulty with this argument. How could the jury know with any reasonable degree of probability the rate of interest existing at the time of a future sale? Would it be greater or less, and if so, by how much? When would Canada West elect to make its sale or, alternatively, when would the mortgagee exercise its right to accelerate Canada West's mortgages? We conclude the trial court correctly excluded the evidence related to the potential loss of favorable financing. At best the evidence lay within

the realm of remote and speculative damages, evidence which is not admissible in a condemnation action. See *DeKalb County v. United Family Life Ins. Co.,* 235 Ga. 417, 421 (219 SE2d 707); *Dept. of Transp. v. Kendricks,* 148 Ga. App. 242, 246 (250 SE2d 854); *Venable v. State Hwy. Dept.,* 138 Ga. App. 788, 789 (3) (227 SE2d 509). Furthermore, we conclude that evidence of a favorable financing arrangement should not be the basis for arriving at a just and adequate compensation in the absence of a loss actually suffered as a direct result of a condemnatory taking. Generally, just and adequate compensation is the fair market value of the condemned property at the time of taking. *State Hwy. Dept. v. Thomas,* 106 Ga. App. 849, 852-854 (5) (128 SE2d 520). Where only a part of the land is taken, the owner is also entitled to recover consequential damages for any reduction in the fair market value of the land remaining, including enhanced value because of the uniqueness of the land itself. Id.; *Wright v. MARTA,* 248 Ga. 372 (283 SE2d 466). Just and adequate compensation for consequential damage thus must be based upon the value of the remaining property and not upon the problematical utilization or loss of a financing agreement which happens to be related to the land. See in this regard, *DeKalb County v. United Family Life Ins. Co.,* supra, pp. 420-421. We find no merit in this enumeration.

2. In its charge to the jury, the trial court charged in legally correct language the law on just and adequate compensation pertaining to lost profits. Canada West asserts error in this charge, complaining that the charge required the jury to find an existing business which was either destroyed or substantially and demonstrably damaged. It maintained that there was no business separate and apart from the land itself and thus such a charge prejudicially confused the jury.

We disagree. Canada West maintained throughout the trial that it had purchased the apartment complex for the sole purpose of converting it to condominiums. It intended to expend substantial sums of money to modify and upgrade the individual apartments. Thus, Canada West engaged in the business of apartment conversion and sought to make its profits from the difference in the lower cost of apartment purchase — renovation and the higher selling price of the individual condominium units. As such Canada West was engaged in a business which was frustrated by the condemnation. Though its business endeavors were derailed, the withdrawal from the conversion and sale business was a matter of timing by Canada West, for it made clear that the conversions and sales would recommence as soon as MARTA completed its work in the apartment enclave. Even though Canada West maintained it sought damages only for the

lessened enhancement of its property, which enhancement would have occurred when the property was evaluated as condominiums rather than as apartments, the trial court charged fully both on "actual value" and lost profits, thus covering the evidence in all its relevant aspects. As we view the charge of the court, the jury could have returned just compensation either on the theory of lost profits, on the theory of actual value, or on a combination of the two theories. Either theory would work to the advantage of Canada West. The charge given was clear, concise and correct, and Canada West has not shown any prejudice in the charge. Error to be reversible must be harmful. *First Nat. Bank of Chattanooga v. American Sugar Refining Co.,* 120 Ga. 717 (1) (48 SE 326); *Burger Chef Systems v. Newton,* 126 Ga. App. 636, 639 (191 SE2d 479).

3. Canada West urges error in the exclusion of evidence that it lost approximately $98,000 in rents during the construction period. The city objected to the evidence on the ground that damages caused by and during the construction period are not compensable damages. Canada West contends on appeal that such damages might affect the after value of the property and thus guidance of those damages was admissible as a matter going to consequential damages. However, Canada West's questioning of its expert was phrased so as clearly to seek lost rentals because of and during the construction period. The expert even stated that the loss of income would not be permanent or continue after the construction was completed. It clearly is the law of this state that damages caused by the construction process of a public project upon private property effected by the condemnation cannot be considered in determining consequential damages. *Metropolitan Atlanta Rapid Transit Auth. v. Datry,* 235 Ga. 568, 579-580 (III) (220 SE2d 905). We find no error in the exclusion of this evidence in the context in which it was offered by Canada West.

4. Canada West argues in three related enumerations that the trial court erred by refusing to charge on the impact upon consequential damages of the floating nature of the six easements taken by the city against Canada West's property. Damages were estimated by mathematically computing the value of the square footage of the land taken temporarily in the construction easements and reducing that to a rental value. The square foot rental value per day was then calculated for the six easements and a value for each of the four 180-day, six-month easements and the two 545-day, 18-month easements established. Canada West, however, sought to prove that because the easements would not commence until the time of the judgment or anytime from that date up until December 31, 1982, the six-month easements could run from judgment (i.e., not earlier than July 22, 1981) through, at the latest, June 30, 1983, for the

six-month easements and June 30, 1984, for the 18-month easement. Thus, Canada West contends that a putative purchaser would be faced with uncertainty for a period that could amount to almost three years.

While we appreciate the dilemma facing Canada West, this court has determined, in effect, that the contingency period per se is not compensable. The owner is deprived of the use of his property only during the actual time of the exercise of the temporary easements and thus compensation must be based on the period of the easement and not on the entire time during which the easement may be exercised. See *Collins v. MARTA,* 163 Ga. App. 168, 169 (2) (291 SE2d 742). As we view the unused time available in the easements, this is similar to inconvenience caused by the construction period. The denial of the requested charges and exclusion of evidence relating to these extensions of the period of damages were not error on the basis of loss of use of the property to Canada West.

Nevertheless, Canada West argues that as to a putative purchaser, the indeterminate period of the easements would have an adverse impact upon the sale to such purchaser because that purchaser would not be aware when the site would be free of construction or when sales as condominiums could be resumed. The argument thus addresses itself to consequential damages. Once again, we are faced with the problem of vague and speculative questions to be determined by the jury. The jury could not know the length of a "floating" easement any better than could a putative purchaser once some criteria was utilized other than the specific periods established by the length of the easements set forth in the declaration of condemnation. Thus the jury could not be expected to arrive at compensation based upon such a speculative foundation.

5. Canada West urges error because the trial court would not allow the jury to receive evidence that there were numerous contracts already in existence for the sale of a number of the apartment units as condominiums. Although there were 22 such contracts, Canada West voluntarily elected to withdraw these contracts and none was ever closed. Thus, there is no evidence of monetary loss or gain resulting from the actual closing of condominium sales. Canada West offered the contracts to show that it was well along in its plans to convert the apartments to condominiums and that sales would have occurred as gradually escalating values (based on corresponding sales of other comparable condominiums) except for the impairment of its market by the advent of the MARTA railway through the apartment site. The evidence was offered and rejected on two occasions during the trial. One offer complained that the sales would have occurred except for the planned construction of a rail line, and the second offer that

Canada West was willing to accept a 15% reduction in cost to offset the detriment of pending MARTA construction.

Inasmuch as the review of the evidence shows that Canada West introduced this evidence only to show lost profits from sales of condominium units to its tenants prior to the actual condemnation by the city, the trial court did not err in refusing evidence of pre-condemnation damages based upon the imminence of the condemnation. *Housing Auth. of Decatur v. Schroeder,* 222 Ga. 417, 419 (151 SE2d 226).

6. Canada West requested charges on the identification of the individual units as condominiums and the increased valuation of the units as, in effect, separate units of real estate rather than as a single integrated piece of property which was condemned as a unit rather than as 144 separate units. While such a charge might have been appropriate if the 144 units were individually owned as condominiums, in fact at the time of the taking the property was an apartment grouping all singly owned by Canada West. As previously indicated, even at the time of the litigation itself the building destroyed by the rail line passage as well as the remaining living units were still apartments not then being offered for sale as condominium units. Thus the requested charges were not adjusted to the evidence and as such properly were refused. *Seaboard C. L. R. Co. v. Thomas,* 229 Ga. 301, 302 (190 SE2d 898). Moreover, the trial court did not remove from the jury consideration of the valuation of the units at their highest and best use as condominiums, either as the value of the destroyed apartment building or as a measure of consequential damages to the remaining units. The jury was allowed to inquire as to all legitimate purposes, capabilities and uses to which the property might be adapted, provided that such use was reasonable and probable and not remote or speculative. We find no error by the trial court in its denial of this requested charge.

7. The city of Atlanta had interviewed as a potential witness an expert real estate appraiser. However, the witness had been nonavailable to the city due to his absence from the city. By offer of proof, the city showed it had not intended to call the witness. As a result the name of this witness was not included as one of the witnesses to be called by the condemnor. However, shortly prior to trial, the witness became available and was called by the city as a rebuttal witness. Canada West objected to the use of this witness because of nondisclosure. The trial court, having ascertained the facts as above, granted a brief recess and allowed the condemnee, Canada West, to interview the witness prior to the presentation of his testimony.

The purpose of all trials is to arrive at the truth of the issues in

controversy. Thus, the courts of this state have held that it is not error to call an unlisted witness in rebuttal, for the obvious reason that the rebuttal witness may not be necessary except to respond to an issue raised by the opposing party. *Mize v. State,* 240 Ga. 197, 199 (6) (240 SE2d 11); *Bennett v. State,* 158 Ga. App. 421, 426 (6) (280 SE2d 429). The trial court followed the appropriate procedure upon ascertaining the competency of the witness. See *International &c. Local 387 v. Moore,* 149 Ga. App. 431, 435 (10) (254 SE2d 438); *Nathan v. Duncan,* 113 Ga. App. 630, 638 (7) (149 SE2d 383). There is no merit in this enumeration.

8. Canada West filed its complaint against the actual condemnor, the city of Atlanta. Thereafter, shortly before trial, the city, over the objection of Canada West, interpleaded as a co-defendant the Metropolitan Atlanta Rapid Transit Authority. Under Sec. 12 of the MARTA Act of 1965, Ga. L. 1965, p. 2266, MARTA does not have the direct power of eminent domain. The city of Atlanta or other appropriate local government may, on behalf of MARTA exercise all necessary powers of condemnation available to them. The city then simply conveys any property so acquired to MARTA upon MARTA's payment for the total cost of acquisition.

Under the provisions of OCGA § 9-11-25 (c) (Code Ann. § 81A-125): "[T]he action may be continued by or against the original party unless the court, upon motion, directs the person to whom the interest is transferred to be substituted in the action or joined with the original party." As the transferee of the interest of the city of Atlanta, MARTA was a proper party under this section and it was within the discretion of the trial court to join MARTA, upon motion, as a party. Inasmuch as there was no contest between the parties as to the legality of the taking as such, only as to the amount of damages, and MARTA was ultimately and solely responsible for the payment of those damages, it properly was made a party to the action. We discern no abuse of discretion in its addition as a party. Canada West argues however that the addition of MARTA was designed to direct the jury's attention away from the city and to increase a sensitivity to the needs of MARTA and thus to gain some benefit or increased good will toward MARTA. We discern no validity to that argument. The condemnation petition from the beginning expressly stated that it was brought by the city on behalf of MARTA and for the purposes of the rapid rail system. The addition of MARTA merely brought the parties in line with the true interests involved in the case. Appellant has demonstrated no harm by the addition of MARTA as a party defendant.

9. In its twelfth enumeration, Canada West argues the trial court erred in giving condemnor's request to charge on the income

producing qualities of the property. Both parties, in presenting their evidence, utilized as one of the means of determining adequate compensation for the taking, the income producing capability of the apartment-condominium complex, i.e., an income approach to determine value. The requested charge as given by the court simply allowed the jury to consider the income producing potential of the property either as an apartment or as a condominium use. Our examination of the charge as given by the trial court convinces us that for the purpose given (which we have concluded was appropriate and adjusted to the evidence) the charge was couched in correct legal principles and was neither misleading nor confusing. In this regard, see Division 2 of this opinion. There is no merit in this enumeration.

10. In its last enumeration of error, Canada West complains the trial court erred in refusing to submit to the jury the issue of expenses of litigation and attorney fees. Such expenses have expressly been declared not to be recoverable in a condemnation action. *White v. Ga. Power Co.*, 247 Ga. 256 (1) (274 SE2d 565); *DeKalb County v. Trustees, Decatur Lodge &c.*, 242 Ga. 707 (251 SE2d 243). Thus the trial court would have erred had such an issue been submitted to the jury. Nor can we, contrary to appellant's suggestion, disregard those cases or take an action that is tantamount to overruling them. There is no merit to this enumeration.

*Judgment affirmed. McMurray, C. J., and Shulman, P. J., concur.*

DECIDED FEBRUARY 2, 1984 —
REHEARING DENIED FEBRUARY 22, 1984 — 

*Robert D. McCallum, Jr.*, for appellants.
*Thomas A. Bowman, Charles N. Pursley, Jr., W. Stell Huie*, for appellees.