73651, 73652. DEPARTMENT OF TRANSPORTATION
v. CONSOLIDATED EQUITIES CORPORATION et al.;
and vice versa.
(353 SE2d 603)

BIRDSONG, Chief Judge.

These appeals are taken from judgments entered on a jury verdict in a condemnation action involving a partial taking of land on which a business was located. The Department of Transportation (DOT) filed a declaration of taking against realty owned by Consolidated Equities Corporation (CEC) d/b/a Master Hosts Inn. Although this original action involved numerous condemnees, by the time of trial, CEC was the only remaining condemnee.

The condemned property was located at the intersection of Interstates 85 and 285, and Old National Highway. The taking eliminated 12 motel rooms, thereby reducing the motel from 100 to 88 rooms. And, 51 parking spaces were taken, leaving only 66 spaces for 88 rooms. The taking also eliminated the motel's swimming pool and reduced the buffer area between the motel and the interstate ramp

from approximately 50 feet to 23 feet. Before the taking, the motel guests had direct access to Old National Highway. The taking eliminated that access and motel guests traveling on Old National Highway now have ingress and egress only through an easement condemned by DOT on adjoining property.

DOT paid $638,900 into court at the start of this action. DOT's expert witnesses testified to total damages ranging in amounts from $689,000 to $740,600. CEC's experts were of the opinion that the value of the taking varied from $1,011,000 to that of the CEC President of $1,566,641. The jury reached a verdict of $950,000 and judgment was entered on the verdict. Both parties appeal. *Held*:

### Main Appeal No. 73651

1. DOT alleges error in the charge of the court on the measure of damages for a business loss, when the condemnee "repeatedly acknowledged that it was not seeking business loss damages and made no effort to prove the property unique." The trial court correctly charged the jury that "the owner is entitled to be compensated not only for the value of the property taken but also for the consequential damage to the remainder, if any . . . at issue here in this case is a diminution in value of the remainder resulting from taking of eighty-one thousand three hundred forty-six square feet, if you find that there is a diminution. . . . The damage to a business by taking a part of the land where it is conducted may be considered in determining its effect upon the market value of the business property but it is not a separate item of damage. The measure of damages for the injury of the business would be the difference in value of the business before and after such taking of the land or any interest therein resulting from such taking." Hence, the court charged that if the jury found a diminution in value of the business it could be considered, "not as a separate item of damage," but as an element in determining the diminution, if any, of the value of the property remaining.

DOT argues on appeal that "[b]usiness loans can only be recovered as a separate item upon a showing of uniqueness." This is a correct statement of law if CEC was attempting to establish damages to a business "as a separate item. . . ." *Bowers v. Fulton County*, 221 Ga. 731 (3) (146 SE2d 884). However, this was not the theory upon which CEC proceeded at trial. CEC's theory of recovery was that the taking deprived it of the realty and resulted in consequential damages to the remainder, and business loss was relevant to the amount of consequential damages. In *Williams v. State Hwy. Dept.*, 124 Ga. App. 645, 647 (185 SE2d 616), we held that "[i]n the absence of a showing of a special or unique value to the owner, the damage to a business by a partial taking of the land is no basis for compensation,

*except evidence of such damage may be given to the jury* to help establish market value of the property. *When a partial taking damages a business,* the market value of the remaining land is affected by the best use rule and no special element of damage is required. *The resulting decrease in market value of the remaining land is the consequential damage.*" (Emphasis supplied; punctuation omitted.) Accord *Department of Transp. v. Dent,* 142 Ga. App. 94 (3) (235 SE2d 610); *Bowers,* supra; *State Hwy. Dept. v. Hood,* 118 Ga. App. 720 (2) (165 SE2d 601). We further clarified this concept in *Department of Transp. v. Kendricks,* 148 Ga. App. 242, 245 (250 SE2d 854), by explaining that "in the absence of the total destruction of a business conducted on the partially condemned property where both the property and the business are considered as one property right and are owned by one person or interest, the partial business loss cannot be established as a separate item of damage but is a matter going to the diminution in the value of the property."

Hence, the correct measure of damage in the instant case, because of the taking of the realty on which the business was operated, "would be the difference in market value prior to and after the taking." *Bowers v. Fulton County,* 122 Ga. App. 45, 50 (176 SE2d 219), aff'd 225 Ga. 745. Accord *Wright v. MARTA,* 248 Ga. 372, 374 (283 SE2d 466); *Hood,* supra at 720. The charge given was correct.

2. Appellant contends the court erred in ruling the appellee "had a special right to turn left from and into Old National Highway[,] which . . . was taken by the instant condemnation[,] and in charging the jury accordingly." CEC relied upon language in a 1973 deed from DOT which provided in part as follows: "Department of Transportation, Right of Way Deed. . . . This conveyance made and executed [to] . . . Consolidated Equities Corporation . . . the owner of a tract of land . . . through which a state aid road . . . has been laid out by the Department of Transportation. . . . As part of the consideration for this conveyance, the Department of Transportation covenants and agrees to construct the curb cut at Station 21 + 55 and island in the center of Old National Highway . . . so as to permit left turns from and into Old National Highway from the proposed roadway. . . . The Department of Transportation further covenants and agrees to permit the signalization of the intersection of Old National Highway with said proposed roadway so that vehicular traffic may legally turn left from and into Old National Highway from said proposed roadway." It is clear that DOT covenanted, as part of its consideration in a prior condemnation action, to the signalization of a roadway from Old National Highway to appellee's property granting ease of access into and exit from the Master Hosts Inn. The trial court concluded "that a right was conveyed in consideration for . . . a right of way deed for land. And that right is now being taken away. And I think constitu-

tionally they are entitled to some consideration."

Appellant has directed our attention to *Dougherty County v. Snelling*, 132 Ga. App. 540 (208 SE2d 362) and *Clark v. Clayton County*, 133 Ga. App. 171 (210 SE2d 335). In *Snelling*, this court restated the general rule that "[a]djoining owners of property or operators of businesses on property adjoining a street or highway have no vested interest in the traffic pattern which controlling authorities may provide for the public street from time to time. If they suffer damage when the pattern is changed it is a damage suffered by members of the general public owning property or operating businesses adjacent to a street or highway, and for which there can be no recovery. The damage is not peculiar to the condemnees. [Cit.] The regulation of traffic is a governmental function. [Cit.] The changing of traffic patterns, prohibiting of left turns at stated places, and providing medians for separating northbound and southbound lanes of traffic (or eastbound and westbound) are matters which affect all of the public in the same manner. . . . A damage suffered by the condemnee which is different from that suffered by the general public in degree only, and not in kind, is not compensable or recoverable. [Cits.]" 132 Ga. App. at 543-544. Thus, in *Clark* this court found that where a highway permitted a turn into a motel but DOT closed the cross-over and opened another one approximately 370 feet north of its former location, the motel owners were not entitled to compensation which resulted from the change in the median. But see *Department of Transp. v. Whitehead*, 253 Ga. 150 (317 SE2d 542); *Department of Transp. v. Whitehead*, 169 Ga. App. 226, 228-229 (312 SE2d 344).

These arguments do not address the issue presented by these facts. CEC does not contend the State may not change the traffic light without compensating the inconvenienced adjacent landowners. They contend they had a property right, granted to them in a deed from DOT, and that contract right was condemned in the present action and they are entitled to compensation. We find that appellee had been granted a contractual right in a deed from DOT to have a signal near its business location which permitted ease of access to its motel. This signalization was part of bargained for consideration in a condemnation action between CEC and DOT. Our Constitution provides that "private property shall not be taken or damaged for public purposes without just and adequate compensation being first paid." Art. I, Sec. III, Par. I (a), Georgia Constitution of 1983. "A contract is obviously a property right, and the sort of taking or damaging which poses the constitutional requirement of just and adequate compensation may be any species of property. [Cit.] As property, contracts may be condemned. [Cit.]" *DeKalb County v. United Family Life Ins. Co.*, 235 Ga. 417, 419 (219 SE2d 707). "[A]ny substantial interference with the elemental rights growing out of ownership of private prop-

erty is considered a taking." *Woodside v. City of Atlanta*, 214 Ga. 75, 84 (103 SE2d 108). In *City of Atlanta v. Airways Parking Co.*, 225 Ga. 173, 174 (167 SE2d 145), the city condemned "a portion of the rights of Airways Parking Company under its contract with the city." The condemnee conceded the sovereign power to take private property for public use, but contended the power of eminent domain did not include authority to change the obligation of contract without the consent of the other contracting party. The Supreme Court found "[t]he obligation of a contract is not impaired when it is appropriated to a public use *and compensation made therefor. . . .* The condemnation proceeding provides a means of compulsory exchange of rights under the contract *for a monetary judgment.*" (Emphasis supplied.) Id. at 175-176.

This court, in *City of Lawrenceville v. Yancey*, 173 Ga. App. 446 (326 SE2d 810) addressed a similar issue in which Yancey, by deed, conveyed part of his land to the city for use as a sewage treatment oxidation pond. "As part of the consideration for the transfer, the City agreed to build a road and bridge" to provide Yancey access to his property. The City failed to provide Yancey with his bargained-for consideration, the road and bridge. We noted the acceptance by the City of the conveyance and its concomitant obligation "to fulfill the covenant at issue." Id. at 446. We affirmed the verdict and judgment of the trial court for damages resulting from the failure to perform its contractual obligation which was a part of the bargained for consideration.

In the instant case, CEC possessed a contractual right, granted in the 1973 deed as part of the consideration for the prior condemnation. That contractual right could be condemned by DOT; however, the condemnee was entitled to just and adequate compensation therefor. The trial court did not err in charging the jury the condemnee has a special right to turn left from and into Old National Highway.

### Cross-Appeal No. 73652

On August 27, 1982, DOT filed a declaration of taking against the CEC property and paid into the registry of the court $638,900. On August 15, 1985, the jury returned a verdict awarding CEC the sum of $950,000 as just and adequate compensation for the taking. The record shows that the trial court entered two judgments on August 20, 1985, and both bear the date of signing of August 19. Another Order, dated and filed August 20, 1985, vacates the judgment entered "August 20, 1985 at 9:30 a.m." and "nunc pro tunc" entered an attached order as of "August 20, 1985 at 2:00 p.m." Both parties agree that the "first judgment" provided for a principal award in the amount of $311,100, the difference between the amount paid into the registry of

the court ($638,900) and the jury verdict ($950,000), and pre-judgment interest at the rate of 7% per annum from the date of the taking until the date of the judgment, in an amount of $64,613.98. The first judgment then awarded post-judgment interest at the rate of 12% per annum upon the combined sum of principal and interest, $375,713.98.

The "second judgment" awarded the same principal amount of $311,100 and 7% pre-judgment interest in the amount of $64,613.98. However, post-judgment interest, at the rate of 12% per annum, was awarded only on the principal amount of $311,100, not on the combined amount of principal and interest as in the first judgment.

CEC has cross-appealed from this "nunc pro tunc" order which substituted "the Second judgment for the First Judgment." It contends the court erred in entering the second judgment "which failed to provide for post-judgment interest on all just and adequate compensation. . . ."

Our Constitution mandates that "private property shall not be taken or damaged for public purposes without just and adequate compensation." Art. I, Sec. III, Par. I (a), Ga. Const. of 1983. At issue is whether pre-judgment interest is to be included as a portion of "just and adequate compensation." Several statutes bear on this question. Pre-judgment interest in condemnation cases is authorized by OCGA § 32-3-19 (c) which provides: "After just and adequate compensation has been ascertained and established by judgment, the judgment shall include, *as part of the just and adequate compensation awarded, interest from the date of taking to the date of payment pursuant to final judgment at the rate of 7 percent per annum* on the amount awarded by final judgment as the value of the property as of the date of taking." (Emphasis supplied by cross-appellant.) Post-judgment interest on "judgments in this state shall bear interest *upon the principal amount* recovered at the rate of 12 percent per year." (Emphasis supplied.) OCGA § 7-4-12. Another general statute on judgments provides that "the judgment shall be entered for the principal sum due, with interest, provided the claim upon which it was obtained draws interest. *No part of the judgment shall bear interest except the principal which is due on the original debt.*" (Emphasis supplied.) OCGA § 9-12-10.

Accordingly, this latter statute forbids post-judgment interest except on the principal or original debt and expressly excludes pre-judgment interest, where authorized, to be included in the amount used to compute post-judgment interest. This court has consistently held that "interest on interest" is not authorized. *Department of Transp. v. Wright*, 169 Ga. App. 332, 338 (312 SE2d 824); *Department of Transp. v. Kendricks*, supra at 248; *State Hwy. Dept. v. Owens*, 120 Ga. App. 647, 649 (5) (171 SE2d 770); *State Hwy. Dept. v. Godfrey*,

118 Ga. App. 560 (2) (164 SE2d 340). The cross-appellant's reading of OCGA § 32-3-19 is taken out of context. The first sentence of subsection (c) of that statute provides: "After just and adequate compensation has been ascertained and established . . . the judgment shall include . . . interest from the date of taking . . ." Thus, the term "just and adequate consideration" does not include pre-judgment interest as an integral part, which would make pre-judgment interest subject to post-judgment interest.

*Judgments affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 3, 1987.

Michael J. Bowers, Attorney General, Marion O. Gordon, First Assistant Attorney General, Roland F. Matson, Senior Assistant Attorney General, Beryl H. Weiner, J. Matthew Dwyer, Jr., James S. S. Howell, Dennis S. Mackin, Thomas C. Dempsey, for appellant.
James L. Paul, Katharine C. Robey, for appellees.