A97A0712. PINKERTON & LAWS, INC. v. MACRO
CONSTRUCTION, INC. et al.
(485 SE2d 797)

BLACKBURN, Judge.

Pinkerton & Laws, Inc. (P & L), a general contractor, entered into a contract with Macro Construction, Inc. (Macro), a subcontrac-

tor, for Macro to frame buildings for P & L on a certain construction project. Macro was bonded for this project by Amwest Surety Insurance Company (Amwest). Disputes arose under the construction contract, and P & L ultimately declared Macro in default. P & L then made a claim for payment under the bonds to Amwest. When Amwest refused the claim, this litigation ensued. At trial, the jury found in favor of P & L against Macro, but not against Amwest. It also found for Amwest and Macro on their counterclaim against P & L. P & L appeals from the jury's verdict, the court's denial of its motion for new trial, and the form of the judgment entered by the court.

1. At trial, Amwest contended that it denied P & L's claim under the bonds because P & L defrauded Amwest into issuing the bonds. P & L now contends that it cannot be liable for fraud because there was no evidence that Amwest exercised due diligence before issuing the bonds.

Although P & L is challenging the sufficiency of the evidence, there is no indication in the record that it ever raised this issue by motion for directed verdict or otherwise so as to allow the trial court to pass upon it. See generally *Krause v. Vance*, 207 Ga. App. 615, 619 (428 SE2d 595) (1993). It is therefore not clear that the issue was preserved for appellate review. However, because Amwest did present evidence that it exercised due diligence, P & L is not entitled to reversal on this ground. "Where a jury returns a verdict and it has the approval of the trial judge, the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of the weight and credit given the evidence." (Punctuation omitted.) *Lofty v. Fuller*, 223 Ga. App. 95, 97 (2) (477 SE2d 30) (1996).

P & L contends that because Amwest failed to ascertain the truth about the terms of the contract between Macro and P & L before issuing the bonds, P & L cannot be liable for fraud. Amwest's employee, Killeen, issued the bonds after talking with P & L's project manager about the contract between Macro and P & L. Killeen did not have an executed copy of those parties' contract when he issued the bonds. However, Killeen testified that it was not uncommon in the industry for a surety to write a bond without a copy of the contract between the principal and the obligee before it, especially where, as here, the surety gets verbal confirmation of the material terms of the contract. Kenneth Matheson, a surety expert, testified that it was common industry practice for sureties to write bonds without written copies of the contracts before them. He further testified that Killeen followed ordinary industry practice, and that it is common to take the word of the obligee, in this case P & L, regarding certain bonding considerations. Under the "any evidence" standard,

Amwest therefore presented evidence that it exercised due diligence before issuing these bonds, and this enumeration is without merit.

2. P & L argues that because no confidential relationship existed between it and Amwest, there could be no basis for a finding that P & L constructively defrauded Amwest into issuing the bonds. However, the jury was charged on both actual and constructive fraud, and its verdict form does not specify what type of fraud it found. Because P & L contests only Amwest's due diligence with respect to actual fraud, and because we hold in Division 1 that Amwest did exercise due diligence, actual fraud is established, and we therefore need not address the issue of constructive fraud.

3. P & L claims the trial court erred in denying its motion for new trial. "The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the denial of defendant's [motion] for new trial . . . will not be disturbed." (Punctuation omitted.) *Lofty*, supra at 97.

P & L sets forth no separate argument in its appellate brief on this issue, but instead refers us to its arguments regarding fraud. Divisions 1 and 2 are therefore dispositive of this enumeration, and as we have found evidence in support of the verdict, the trial court did not err in denying P & L's motion for new trial.

4. P & L asserts that the judgment does not conform to the verdict, and further asserts that the judgment fails to account for a setoff. The jury's verdict awarded P & L $170,754 against Macro, nothing against Amwest, and awarded Macro and Amwest $32,057 on their counterclaim against P & L.

(a) With respect to the setoff, P & L contends that it is entitled to set off the amount it owes Macro and Amwest, $32,057, against the amount of the verdict owed to it by Macro, $170,754. Because Macro assigned its recovery on the counterclaim to Amwest, however, the judgment entered by the court provides only that Amwest is entitled to $32,057. The effect of the claimed setoff would be that Amwest would recover nothing, and Macro would owe P & L only $138,697.

OCGA § 9-13-75 provides in part that "[o]ne judgment may be set off against another, *on motion*, whether in the hands of an original party or an assignee." Setoff is therefore not automatic; it must be preceded by a motion. See generally *Payne v. Jones & Kolb*, 190 Ga. App. 62, 63 (1) (378 SE2d 467) (1989) (enumerating as error failure to grant motion to set off). The record indicates that P & L did not make a motion, written or oral, for setoff of this amount prior to entry of the judgment. When the court entered the judgment, P & L made a motion to set aside the judgment based in part upon the

court's failure to account for setoff. Inasmuch as P & L failed to move for setoff as required by OCGA § 9-13-75, we cannot say the trial court erred in failing to grant that relief when it entered the judgment on the jury's verdict.

(b) P & L also argues that the judgment entered by the trial court fails to account for its verdict against Macro. Although the judgment states that P & L takes nothing from Amwest, and Amwest takes $32,057 from P & L, it does not state that P & L takes $170,754 from Macro. P & L contested this issue in the same motion to set aside mentioned above, but said motion was denied. In its response to this motion, Amwest acknowledged that the judgment should be amended to reflect P & L's $170,754 verdict against Macro.

"A judgment must conform to the verdict (OCGA § 9-12-9); and likewise it must follow the true meaning and intent of the finding of the jury." (Punctuation omitted.) *C&S/Sovran Corp. v. First Fed. Sav. Bank of Brunswick*, 266 Ga. 104, 108 (3) (463 SE2d 892) (1995). It is clear that the jury intended to award P & L $170,754 against Macro, and the judgment must be amended to reflect that intention. However, as P & L "has enumerated no error requiring reversal of the judgment below . . . we affirm the judgment of the trial court with direction that it vacate that part of its judgment erroneously disregarding the clear intendment of the jury's verdict and enter judgment for that amount accordingly." *City of Fairburn v. Cook*, 188 Ga. App. 58, 69 (11) (372 SE2d 245) (1988). The trial court is therefore ordered to amend its judgment to reflect the jury's award of $170,754 against Macro.

*Judgment affirmed with direction. Pope, P. J., and Johnson, J., concur.*

DECIDED MARCH 18, 1997 —
RECONSIDERATION DENIED APRIL 11, 1997.
 Before Judge Eldridge.

*Bowman S. Garrett, Jr.*, for appellant.

*Thompson & Slagle, Dewitte Thompson, Jr., Jefferson B. Slagle, David J. Merbaum*, for appellees.