A01A2501. DAVID C. JOEL, ATTORNEY AT LAW, P.C.
v. CHASTAIN.
(562 SE2d 746)

ANDREWS, Presiding Judge.

A jury found David C. Joel, Attorney at Law, P.C. (the P.C.) breached its fiduciary duty to its client, Brenda Chastain, and awarded Chastain $4,000 in compensatory damages and $20,000 in attorney fees pursuant to OCGA § 13-6-11. The jury found in favor of the P.C. on Chastain's claims under the Fair Business Practices Act and for fraud. The P.C. claims the evidence did not support the verdict and that the trial court erroneously instructed the jury. Because we find no error in the instructions, and find evidence supporting the jury's conclusion that the P.C. breached its fiduciary duty and harmed Chastain, we affirm as to the breach of fiduciary duty and compensatory damages. Although we conclude there was sufficient evidence of bad faith to support the award of attorney fees pursuant to OCGA § 13-6-11, we vacate the award and remand the case to the trial court for a hearing to determine what portion of the $20,000 awarded was attributable to Chastain's successful claim.

1. The evidence viewed in favor of the verdict was sufficient to show a breach of fiduciary duty and damages flowing from the breach.

After Chastain was injured in an automobile accident in March 1996, she retained Joel's P.C. in May 1996 to represent her on a personal injury claim. Joel, who at the time was the sole shareholder of the P.C., testified that he developed the P.C. into a "volume practice" using television and other advertising. Joel was not in the P.C.'s office on a regular basis, took no part in handling the cases, and was notified by weekly faxes of case dispositions after they had settled. According to Joel, "generally the case management decisions for the Georgia clients would have been left primarily to those persons who staffed the Atlanta office." Evidence showed that, during some periods when important settlement decisions were being made on Chastain's case, the P.C. employed one attorney other than Joel at the Atlanta office and eleven nonattorney support staffers to handle up to 500 pending cases. To manage the high volume, the P.C. employed nonattorney "case negotiators" who were authorized under the P.C.'s guidelines to relay settlement offers from insurance companies to clients, respond for the client to the offers, and, under supervision and instructions from the attorney, advise the client on accepting or rejecting the offers.

Under this system, Joel testified that Chastain's case was assigned to a nonattorney employee of the P.C., Terry Lee, who acted as Chastain's "case negotiator."

Q: As a case negotiator for [the P.C.], it would not be possible for Terry Lee to have given Ms. Chastain legal advice on whether she should accept or reject a particular offer, would it?

A: I'm not sure that he would have, but it is possible.

Q: He was authorized to do that, correct?

A: He was authorized to transmit the offers from the insurance company and relay the client's wishes back to the insurance company. Now, what the parameters of that authorization was in his mind, I don't know.

Q: And he could also advise your clients on accepting or rejecting the offers, isn't that what you told us at your deposition?

A: Within the guidelines that were set, he could do that.

Q: Mr. Joel, is your contention that in addition to Mr. Lee and any other lay person that might have worked on Ms. Chastain's file that an actual attorney was assigned to the case from the time she initially retained [the P.C.]?

A: That's not how we operate it, but she would have been able to speak to a lawyer at any time during that two-year period.

Q: Which attorneys had reviewed Ms. Chastain's case file before July of 1997?

A: I don't know.
Q: There's no way for you to determine if any attorney was involved with that case, is there?
A: No. But it would have been [the attorney] who was there. . . . I wasn't there, so I don't know.

Upon review of the P.C.'s file on Chastain, Joel was unable to find any reference to an attorney's involvement in the case prior to January 1998. He stated that there may be evidence of attorney involvement in the P.C.'s computerized case management system, but no such evidence was produced. Joel testified that there was no procedure in place for client files to be reviewed by an attorney on a periodic basis, and he acknowledged that the system he created for operation of the P.C. was fraught with potential trouble.

Q: So you had 11 administrative employees, with one attorney who wasn't there all the time. Isn't that ratio just asking for trouble?
A: Could be.[1]

After seeing the P.C.'s television advertisements, Chastain contacted the P.C., met with nonattorney employees, and signed a fee contract with the P.C. in May 1996. Thereafter, the P.C. assisted her through nonattorney employees in seeing physicians for treatment of her injuries through November 1996. In July 1997, Lee, a nonattorney case negotiator for the P.C., contacted Chastain. Lee introduced himself to Chastain as the P.C.'s attorney who had been assigned to handle negotiations with the insurance company in her case. Lee subsequently conveyed several offers to Chastain from the insurance company (all of which Chastain rejected), advised Chastain not to pay pending medical bills, and recommended that she take the insurance company's final offer of $10,000. Despite her directions to Lee to reject the $10,000 offer, a few days later Chastain received correspondence from the P.C. dated September 5, 1997, containing settlement and release documents indicating her case had been settled with the insurance company for $10,000. When Chastain contacted Lee about the documents, he told her they were sent by mistake and to throw them away. Evidence showed, however, that Lee had in fact accepted the insurance company's $10,000 offer on behalf of Chastain without her consent, although Chastain was not informed of this fact.

---

[1] Joel testified he later phased out the case negotiator system because of "the confusion it may or may not have created. . . ."

Unhappy with Lee, Chastain called the P.C. asking to speak to Joel, but he never returned her calls. Joel testified that he was never told by the P.C. that she called. In November 1997, Chastain called the P.C. to determine the status of her case and was informed that Lee was no longer employed by the P.C. At that time, she asked again to speak with Joel but was told he was unavailable. Over a period of several weeks, Chastain called the P.C. on numerous occasions asking to speak to Joel or another attorney about her case. She was told no one was available, and her calls were not returned. Chastain persisted, and during yet another call to the P.C. in January 1998, she finally spoke to an attorney employed by the P.C. The attorney, George French, told Chastain that Lee no longer worked for the P.C. and that he had been arrested for falsely representing himself to be an attorney. During her conversation with French, Chastain learned for the first time that Lee was not an attorney and that he had settled her case for $10,000 without her consent. Evidence showed Lee was arrested at the P.C. in September 1997 on charges that he had practiced law without a license prior to being employed by the P.C. Joel testified that Lee was not authorized to represent himself as an attorney or settle cases without consent and that Lee was fired after he was arrested.

Chastain filed a grievance with the State Bar over the representation provided by the P.C. The P.C. offered to forfeit its legal fees and give Chastain the entire $10,000 settlement check if she would drop the grievance. After Chastain rejected this offer, the P.C. took the position on behalf of Chastain that the settlement was a nullity and timely filed a suit for Chastain. Chastain eventually agreed to a $25,000 settlement of her case obtained by the P.C. Chastain testified that she experienced severe emotional distress and depression as a result of the manner in which the P.C. handled her case, especially the misrepresentations by Lee.

Chastain's subsequent suit against the P.C. was not for legal malpractice, but asserted claims for breach of fiduciary duty, violation of the Fair Business Practices Act, and for fraud. In addition to compensatory damages, the suit sought recovery of punitive damages and attorney fees pursuant to OCGA § 13-6-11. The jury returned a verdict in favor of Chastain on the breach of fiduciary duty claim and awarded $4,000 in compensatory damages and $20,000 for attorney fees. The jury returned a verdict in favor of the P.C. on the remaining claims and refused to award punitive damages.

As Chastain's legal representative, Joel's P.C. had a fiduciary relationship with its client. *Tante v. Herring*, 211 Ga. App. 322, 327 (439 SE2d 5) (1993), rev'd on other grounds, 264 Ga. 694 (453 SE2d 686) (1994); see *Henderson v. HSI Financial Svcs.*, 266 Ga. 844, 845 (471 SE2d 885) (1996) (attorney practicing in a professional corpora-

tion owes same duty to clients, and the professional corporation is liable for actions of its members). Thus, the P.C. had a fiduciary duty to show Chastain the utmost good faith and loyalty and to act solely for her benefit. *Tante*, 211 Ga. App. at 327. In performing this duty, the P.C. was obligated not to pursue any interest or take any act adverse to Chastain's interests or incompatible with applying its best skill, zeal, and diligence in representing Chastain. Id.; *Nelson & Hill, P.A. v. Wood*, 245 Ga. App. 60, 67 (537 SE2d 670) (2000); *Tunsil v. Jackson*, 248 Ga. App. 496, 499 (546 SE2d 875) (2001).

There was evidence from which the jury could have concluded that the P.C. violated this fiduciary duty to Chastain. Joel organized his P.C. to handle a high volume of cases using nonattorney "case negotiators" like Lee and other support staff, at times under the supervision of a single attorney. Although attorneys generally employ nonattorneys such as secretaries, investigators, and other paraprofessionals to assist them in providing legal services to clients, they act for the attorney and must be adequately trained and supervised to ensure that the attorney's legal and ethical duties to clients are not compromised. See Georgia Rules of Professional Conduct, Rule 5.3. Joel's testimony shows that he was unsure of the amount of attorney supervision, if any, that Chastain's case received. Despite no evidence that Joel or the P.C. sanctioned the misrepresentations that Lee made to Chastain while acting as her "case negotiator," the jury was authorized by the evidence to conclude that Joel deliberately organized his P.C. in a manner which allowed Lee, without adequate supervision by an attorney, to mishandle Chastain's case and that this breached the P.C.'s fiduciary duty to apply its best skill, zeal, and diligence in representing Chastain.[2]

As to damages flowing from this breach, there was evidence that Chastain suffered severe mental distress caused by Lee's misrepresentations and mishandling of her case. As a general rule, mental distress damages are not recoverable in the absence of physical injury where the claim is premised on ordinary negligence. *Hamilton v. Powell, Goldstein, Frazer &c.*, 252 Ga. 149, 150 (311 SE2d 818) (1984). However, mental distress damages may be recovered without proof of physical injury where the claim is based on intentional misconduct. Id. There was evidence that Chastain was damaged by intentional acts of an employee of the P.C. acting within the scope of his employment. Moreover, there was evidence that Joel intentionally instituted the system of practice at his P.C. which provided inadequate supervision of the employee at issue. This was sufficient to

---

[2] We render no opinion on whether there was any conduct which could constitute a violation of State Bar Rules in effect at the time.

allow the jury to conclude that the conduct resulting in the breach of fiduciary duty was intentional or showed a reckless indifference to consequences equivalent to intent. Id. Accordingly, there was evidence supporting the jury's award of $4,000 in mental distress damages caused by the breach of fiduciary duty.

2. We find no merit in the P.C.'s contention that, as a matter of law, Chastain waived her cause of action for breach of fiduciary duty because, after the breach, she allowed the P.C. to continue representing her by filing suit and settling the case.

The breach of fiduciary duty and resulting harm in this case were unrelated to the fact that, after the P.C. discovered the misconduct of its employee, it took steps to properly handle the case. Under the circumstances, there was no waiver. *Paul v. Destito*, 250 Ga. App. 631, 637-638 (550 SE2d 739) (2001); compare *Mauldin v. Weinstock*, 201 Ga. App. 514, 519-520 (411 SE2d 370) (1991).

3. The trial court did not err by instructing the jury on the State Bar Rules standard of conduct in effect at the time, which stated that a lawyer shall not aid a nonlawyer in the unauthorized practice of law, including giving legal advice or taking action for others in matters connected to the law.

An instruction on this standard was proper under the facts of this case. Central to Chastain's claim was evidence that a nonattorney employed by the P.C., who was not adequately supervised by an attorney, misrepresented himself as an attorney, advised Chastain on the case, and settled the case without her consent. The standard at issue was intended to protect a client in Chastain's position from the type of harm she suffered and was relevant to the jury's consideration of whether these actions constituted a violation of the P.C.'s fiduciary duty to Chastain. *Allen v. Lefkoff, Duncan, Grimes &c.*, 265 Ga. 374 (453 SE2d 719) (1995).

4. The evidence was sufficient to support the jury's award of attorney fees to Chastain pursuant to OCGA § 13-6-11.

Attorney fees may be awarded pursuant to OCGA § 13-6-11 despite the existence of a bona fide controversy where bad faith is shown. *Dimambro Northend Assoc. v. Williams*, 169 Ga. App. 219, 224-225 (312 SE2d 386) (1983). Contrary to the P.C.'s contention, we find there was sufficient evidence of bad faith to create a jury issue as to the award of attorney fees. Evidence showed that the P.C.'s employee, Lee, misrepresented himself as an attorney and settled Chastain's case without her consent in September 1997. Unknown to Chastain, Lee was subsequently arrested at the P.C. in September 1997 for previously practicing law without a license. Although Chastain made numerous calls to the P.C. after September attempting to speak to an attorney to ascertain the status of her case, she was continually rebuffed, told no one was available, and was given no infor-

mation about Lee's arrest or the fact that her case had been settled by Lee without her consent. Finally, after over three months of attempting to get information, Chastain was informed by an attorney for the P.C. in January 1998 that her case had been mishandled. There was sufficient evidence for the jury to conclude that the P.C. acted in bad faith in conjunction with its breach of fiduciary duty. *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 750 (542 SE2d 151) (2000).

Nevertheless, Chastain was entitled only to attorney fees attributable to the breach of fiduciary duty claim on which she prevailed. *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (433 SE2d 606) (1993). On Chastain's other claims under the Fair Business Practices Act and for fraud, the jury rendered verdicts for the P.C. Because the attorney fee award was in a lump sum and Chastain did not prove the amount of attorney fees attributable to her successful claim, we reverse the attorney fees award and remand the case to the trial court for an evidentiary hearing to allow Chastain to establish the amount of her attorney fees that were attributable to the claim on which she prevailed. *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147 (475 SE2d 601) (1996).

*Judgment affirmed in part, reversed in part and case remanded with directions. Eldridge and Miller, JJ., concur.*

DECIDED MARCH 12, 2002 —
RECONSIDERATION DENIED MARCH 29, 2002 —

*Martin H. Rubin*, for appellant.
*David C. Joel*, pro se.
*Warren R. Hinds*, for appellee.