A03A1014, A03A1015. PREMIER CABINETS, INC. v. BULAT; and vice versa.
(583 SE2d 235)

JOHNSON, Presiding Judge.

This case arises out of a written agreement between Joseph Bulat and Premier Cabinets, Inc. ("Premier") for the installation of specifically designed and custom-built cabinets. Bulat filed suit against Premier and its principals, Bill Morris and Robert Amtmann, alleging Premier poorly manufactured and installed the cabinets and filed a wrongful lien against his property. He specifically alleged claims for breach of contract, negligent construction and installation,

slander of title, violation of the Fair Business Practices Act, violation of public duty, rescission for nonperformance, and attorney fees. Bulat later amended his complaint to add claims for fraud and punitive damages. Premier counterclaimed for breach of contract, recovery of commercial account, foreclosure of materialman's lien, and litigation expenses pursuant to OCGA § 13-6-11.

Following a jury trial, the trial court granted a motion for directed verdict in favor of Premier, Morris, and Amtmann on the slander of title claim. Bulat appeals from this ruling in Case No. A03A1015. Bulat voluntarily dismissed the violation of public duty and violation of the Fair Business Practices Act claims. The jury found in favor of Premier in the amount of $6,064.44. The jury also found in favor of Bulat in the amount of $3,225 for negligent construction, bond fees in the amount of $256.28, and attorney fees in the amount of $17,465.69. Premier appeals this verdict in Case No. A03A1014.

### Case No. A03A1014

1. At the outset, we must address Bulat's motion to dismiss Premier's appeal. Bulat urges us to dismiss Premier's appeal because Premier's enumeration of errors was not timely filed. According to the record, this Court docketed the case on January 21, 2003, and Court of Appeals Rule 22 requires that an appellant's enumeration of errors must be filed within 20 days after the case is docketed. Bulat argues that Premier's enumeration of errors was not filed until February 11, 2003, one day after it should have been filed. However, Court of Appeals Rule 4 provides that a document is deemed "filed" in the Clerk's office

> when it is deposited in the United States Postal Service registered or certified mail, with sufficient costs, if applicable, provided that the official United States Postal Service postmark date appears either (1) on the transmittal envelope or container, or (2) on the certified mail receipt provided by the United States Postal Service at the time the document is mailed, which receipt must be submitted upon request.

In its response to Bulat's motion to dismiss, Premier has attached a copy of the registered mail receipt containing the official United States Postal Service postmark date of February 10, 2003. Premier has also attached the customer receipt reflecting payment of sufficient funds on February 10, 2003. We therefore deny Bulat's motion to dismiss the appeal on this ground.

2. Premier contends the trial court erred in refusing to allow Premier's evidence of attorney fees to go to the jury for consideration.

However, the record shows that at the end of Premier's case-in-chief, counsel for Premier was permitted to testify as to the attorney fees and expenses of litigation incurred by Premier. While the trial court excluded counsel's "statement of account," the trial court did not exclude the testimony of Premier's counsel concerning attorney fees and litigation expenses. Furthermore, contrary to its argument, Premier has not shown any ruling by the trial court prohibiting the jury from considering the issue. Premier also has not shown that it preserved this issue for appellate review.[1] Absent a specific ruling by the trial court excluding all evidence of attorney fees incurred by Premier, we find no merit to Premier's argument that the trial court erroneously construed the law and refused to allow evidence regarding Premier's attorney fees to go to the jury.

Moreover, the record shows that Premier's counsel did not object to the exclusion of his account statement, did not object to the exclusion of the attorney fee issue on the verdict form, and did not object to the trial court's exclusion of the attorney fee issue in its instructions to the jury. As we have previously held,

> no matter how erroneous the ruling might have been, a litigant cannot submit to a ruling, acquiesce in the ruling, and still complain of same. He is required to stand his ground and fight in order to successfully enumerate as error an erroneous ruling by the trial judge. Acquiescence completely deprives him of the right to complain further; he has agreed that the trial court's ruling was correct by submitting to it. Failure to object to the procedure amounts to waiver.[2]

Since Premier did not raise a specific objection to the exclusion of its account statement and since we can locate in the record no ruling by the trial court excluding any other evidence of Premier's attorney fees, Premier has waived appellate review of this enumeration of error.[3]

3. Premier contends the trial court erred in refusing to charge the jury as to pre-judgment interest. The record shows that Premier requested the trial court to charge the jury that it was entitled to pre-judgment interest at the rate of 18 percent pursuant to OCGA § 7-4-16. However, Premier did not present any evidence supporting its

---

[1] See Court of Appeals Rule 27 (c) (3) (i) (requiring appellant to cite to the record in support of asserted errors) and 27 (a) (1) (requiring essential record citations and a statement of how error was preserved for appeal).

[2] (Punctuation and footnote omitted.) *Plaza Properties v. Prime Business Investments*, 240 Ga. App. 639, 640 (1) (524 SE2d 306) (1999).

[3] See *Dobbs v. Titan Properties*, 178 Ga. App. 389, 392 (4) (343 SE2d 419) (1986).

claim that this case involved a commercial account,[4] and the trial court denied its request for a jury charge regarding the pre-judgment interest applicable on a commercial account.

Premier does not argue that this ruling was erroneous. Instead, Premier argues that the trial court erred in refusing to charge the jury that it was entitled to pre-judgment interest at the legal rate of seven percent. However, the record shows that such a charge was never requested by Premier. After the trial court denied Premier's request to charge the jury that it was entitled to recover pre-judgment interest at the rate of 18 percent, Premier's counsel stated as follows: "In the event you're not going to allow that jury charge, does that mean that the defendant cannot argue in closing for pre-judgment interest at the legal rate of seven percent?" The court responded: "That's correct." Premier's counsel never requested orally or in writing that the trial court charge the jury that it was entitled to award pre-judgment interest at the legal rate of seven percent.

In addition, after the trial court delivered its charge to the jury, the court inquired about objections. Premier merely objected to the extent that the jury could not tell that there was a separate independent claim by Premier. Premier made no objection to the omission of a charge on pre-judgment interest. Since Premier failed to object to the omission of a jury charge on pre-judgment interest after the trial court's charge to the jury, this issue is not preserved for appellate review.[5]

4. The jury's verdict form shows that under the title "Negligent Construction," the jury wrote an amount of $3,225. The jury then added a line underneath entitled "Bond Premium Fees" and included an amount of $256.28. In its judgment, the trial court added the two sums and awarded Bulat $3,481.28 in principal. Premier asserts the jury incorrectly awarded "Bond Premium Fees." According to Premier, these fees represented costs associated with Bulat's "slander of title" claim, which was dismissed by the trial court. We disagree. The jury could have determined from the evidence that the $256.28 represented contract damages or additional expenses of litigation to which it found Bulat entitled.[6]

Moreover, the record shows that at the time the jury returned its verdict, Premier did not object to the jury's inclusion of an award of "Bond Premium Fees" and the jury was dispersed. If the form of the

---

[4] See generally *Jefferson Randolph Corp. v. Progressive Data Systems*, 251 Ga. App. 1, 5 (1) (a) (553 SE2d 304) (2001), rev'd on other grounds, *Progressive Data Systems v. Jefferson Randolph Corp.*, 275 Ga. 420 (568 SE2d 474) (2002).

[5] See OCGA § 5-5-24 (a); *Ford's & Gantt Co. v. Wallace*, 249 Ga. App. 273, 277 (2) (548 SE2d 31) (2001).

[6] See *Gist v. Ferguson Constr. Co.*, 197 Ga. App. 625, 626 (1) (398 SE2d 862) (1990).

verdict was improper, it was incumbent upon Premier to make its objections as to the irregularity of the form at the time of its rendition or the objection is waived.[7]

5. Premier argues that the verdict awarding Bulat attorney fees and expenses of litigation is improper as a matter of law because Bulat did not specify the costs of the successful claim in the litigation. We agree. The issue of attorney fees under OCGA § 13-6-11 is a question for the jury, and an award will be upheld if any evidence is presented to support the award.[8] However, a plaintiff is entitled to recover attorney fees only for that portion of the fees which are allocable to the attorney's efforts to prosecute a successful claim against a defendant.[9]

Bulat had the burden of proof and was required to segregate out the hours that were recoverable from those hours that were not recoverable.[10] At trial, however, Bulat merely proved the "lump sum" amount of attorney fees and expenses of litigation incurred in working on the entire case. Contrary to Bulat's argument, no evidence was presented from which the jury could determine what portion of the total amount of attorney time and litigation expenses incurred was attributable to prosecuting Bulat's successful claim for negligent construction, to prosecuting Bulat's unsuccessful claims, and to defending Premier's counterclaim.[11] The account statement submitted by Bulat's attorney consists of simple statements that a conference was held, a telephone call was made, a letter was written, travel was incurred, or research was conducted. Such broad statements fail to demonstrate the function or substance of the task with sufficient particularity to permit the jury to distinguish between time and expenses attributable to Bulat's successful claim and time and expenses attributable to the pursuit of Bulat's unsuccessful claims and the defense of Premier's counterclaim.[12] Under the state of the evidence in the present case, the jury would have been forced into a posture of pure speculation as to which fees were attributable solely to prosecuting Bulat's successful claim.

Bulat urges that Premier has waived any objection to the award of attorney fees by failing to object to the evidence of attorney fees at trial and failing to object to the verdict form after the verdict was

---

[7] See *Ring v. Williams*, 192 Ga. App. 329, 331 (3) (384 SE2d 914) (1989).

[8] See *Professional Consulting Svcs. of Ga. v. Ibrahim*, 206 Ga. App. 663, 665 (3) (426 SE2d 376) (1992).

[9] *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147 (2) (475 SE2d 601) (1996); *Professional Consulting Svcs.*, supra at 666.

[10] See *Williamson v. Harvey Smith, Inc.*, 246 Ga. App. 745, 751 (8) (542 SE2d 151) (2000).

[11] *Professional Consulting Svcs.*, supra.

[12] *Southern Cellular Telecom v. Banks*, 209 Ga. App. 401, 402 (433 SE2d 606) (1993).

rendered. However, this case is distinguishable from those cited by Bulat, where the award of attorney fees is not contrary to the law.[13] "The recoverability of damages is dependent upon the applicable law and evidence."[14] Under the applicable law, the award of attorney fees in the present case cannot be upheld as authorized pursuant to OCGA § 13-6-11. Because Bulat did not prove the amount of attorney fees and expenses attributable solely to the claim on which he prevailed, we hereby reverse the award and remand the case to the trial court with direction to conduct an evidentiary hearing to allow Bulat to establish the amount of his attorney fees that were attributable to his successful negligent construction claim.[15]

## Case No. A03A1015

6. Bulat contends the trial court erred in granting Premier's motion for directed verdict on the issue of slander of title. We find no error.

OCGA § 51-9-11 defines slander of title to land: "[t]he owner of any estate in lands may bring an action for libelous or slanderous words which falsely and maliciously impugn his title if any damage accrues to him therefrom." The essential elements of this tort are: (1) publication of slanderous or libelous words; (2) that they were malicious; (3) that the plaintiff sustained special damages thereby; and (4) that the plaintiff possessed an estate in the property slandered or libeled.[16] Bulat's slander of title claim was based on the allegation that Premier wrongfully filed a lien against Bulat's property.

While Bulat restates the testimony of his own witnesses in his appellate brief, Bulat fails to point to any evidence that Premier acted with malice in filing the lien notice to protect its right to recover the contract balance. Specifically, Bulat did not present any evidence that the amount set forth in the lien notice was inaccurate. To the contrary, the amount set forth in the lien notice was the contract balance as set forth in the written contract. In addition, Bulat did not present any evidence that Premier, knowing of any alleged false statement, acted in a fashion inconsistent with its statutory privilege to file a lien to protect its right of recovery. According to the evidence, Premier believed the balance of the contract was due "upon delivery" and not "upon completion." The evidence also shows that Bulat instructed Premier to "go ahead and file a lien against the

---

[13] See *Witty v. McNeal Agency*, 239 Ga. App. 554, 556 (1) (b) (521 SE2d 619) (1999).

[14] (Citation and punctuation omitted.) *First Union Nat. Bank v. Big John's Auto Sales*, 203 Ga. App. 797, 800 (6) (417 SE2d 416) (1992).

[15] *United Cos. Lending Corp.*, supra; *David C. Joel, Attorney at Law, P.C. v. Chastain*, 254 Ga. App. 592, 598 (4) (562 SE2d 746) (2002).

[16] *Sanders v. Brown*, 257 Ga. App. 566, 567 (571 SE2d 532) (2002).

property [because Premier] wouldn't get the [balance of] . . . their money in 30 years."

Although Bulat cites the case of *Melton v. Bow*[17] for the proposition that malice may be inferred from the totality of the circumstances, the *Melton* case did not involve the filing of a materialman's lien. It involved verbal misrepresentations which slandered an individual's reputation. In addition, there was also no evidence in the *Melton* case showing that the complaining party actually requested the alleged slanderous statements to be made. In the present case, there is evidence that Bulat told Premier to file the lien because he was not going to pay the company.

Since the notice of lien filed in this case contained no false statements, the trial court correctly granted Premier a directed verdict on Bulat's slander of title claim.[18] Furthermore, the trial court could have correctly found in this case that a directed verdict was warranted on the ground that Premier's filing of the lien notice was privileged under OCGA § 51-5-8.[19] We find no error.

7. Bulat further contends that the trial court erred in granting Morris and Amtmann's motion for directed verdict on the issue of slander of title. According to Bulat, Morris and Amtmann were individually liable for slander of title because Amtmann signed the claim of lien and both individuals authorized the filing of the lien notice. However, for the same reasons we cited in Division 6, the trial court correctly granted Morris and Amtmann's motion for directed verdict on Bulat's slander of title claim. Inasmuch as Bulat does not cite any additional grounds for his slander of title claim against the two individuals, this enumeration is also without merit.

*Judgment affirmed in part and reversed in part in Case No. A03A1014 and case remanded with direction. Judgment affirmed in Case No. A03A1015. Eldridge and Mikell, JJ., concur.*

DECIDED JUNE 9, 2003.

*Glover & Davis, Peter A. Durham,* for appellant.
*Richard A. Gordon, Cammi R. Jones,* for appellee.

---

[17] 145 Ga. App. 272 (1) (243 SE2d 590) (1978).
[18] See *F. S. Assoc. v. McMichael's Constr. Co.,* 197 Ga. App. 705, 707-708 (2) (399 SE2d 479) (1990).
[19] See *Alcovy Properties v. MTW Investment Co.,* 212 Ga. App. 102, 103 (1) (441 SE2d 288) (1994); *Eurostyle, Inc. v. Jones,* 197 Ga. App. 188 (2) (397 SE2d 620) (1990).