A03A0843. SECURITY LIFE INSURANCE COMPANY v. ST. PAUL FIRE & MARINE INSURANCE COMPANY.

(588 SE2d 319)

ELDRIDGE, Judge.

This court remanded *St. Paul Fire &c. Ins. Co. v. Clark*, 255 Ga. App. 14 (566 SE2d 2) (2002).[1] On remand, the trial court reentered judgment as directed by this court against both Security Life Insurance Company and its supersedeas surety and co-defendant, St. Paul Fire & Marine Insurance Company and pared away the punitive damages and the jury award of attorney fees and litigation costs. *Security VI*, supra at 24-25. Now Security Life appeals from the entry of this last judgment, contending that the trial court computed interest on a judgment that had been fully paid and satisfied by St. Paul Fire. On the face of the judgment, the trial court set forth its calculations of pre-judgment and post-judgment interest. St. Paul did not appeal and fully paid and satisfied the judgment. Brady and Clarice Clark transferred and assigned this judgment and issued execution to St. Paul. Such judgment is res judicata between the Clarks and St. Paul and St. Paul's privies, because it was never appealed by St. Paul. See *Dargan, Whitington & Conner, Inc. v. Kitchen*, 138 Ga. App. 414, 416-417 (1) (226 SE2d 482) (1976). Finding no error, we affirm.

1. Security Life contends that the trial court erred in awarding pre-judgment interest under OCGA § 51-12-14, because the attorney fee and litigation award was subsumed in the judgment entered on remand and such damages were reversed on appeal. We do not agree.

On September 25, 1995, in compliance with OCGA § 51-12-14, the Clarks made separate demands for settlement upon Security Life and all defendants for payment of $2,000,000 in settlement of their claims for a total demand of $4,000,000, and Security Life and the other defendants refused to settle within 30 days. At trial, the jury awarded $4,073,000 for fraud and, additionally, attorney fees and expenses of litigation under OCGA § 13-6-11 in the amount of $792,902.08; the judgment entered on June 13, 1996, for attorney fees and litigation costs of $306,290.98 under OCGA § 9-15-14 survived the appeal. The attorney fees and expenses of litigation awarded by the jury must be retried, because such attorney fees and litigation costs were not apportioned and returned separately for the successful fraud claim from the reversed Georgia Racketeer Influenced and Corrupt Organizations Act (RICO) claim and the directed

[1] See *Security Life Ins. Co. v. Clark*, 229 Ga. App. 593 (494 SE2d 388) (1997) (*Security I*); *Clark v. Security Life Ins. Co.*, 270 Ga. 165 (509 SE2d 602) (1998) (*Security II*); *Security Life Ins. Co. v. Clark*, 239 Ga. App. 690 (521 SE2d 434) (1999) (*Security III*); *Security Life Ins. Co. v. Clark*, 273 Ga. 44 (535 SE2d 234) (2000) (*Security IV*); *Security Life Ins. Co. v. Clark*, 249 Ga. App. 18 (547 SE2d 691) (2001) (*Security V*); *St. Paul Fire &c. Ins. Co. v. Clark*, 255 Ga. App. 14 (566 SE2d 2) (2002) (*Security VI*).

verdict against the wrongful rescission claims. *Security VI*, supra at 24. Prior to the judgment, the trial court awarded attorney fees that were never paid by Security Life. Thus, the Clarks' jury verdict for fraud damages and the court-awarded attorney fees exceeded their statutory demand, and the trial court found that they were entitled to pre-judgment interest. OCGA § 51-12-14. Since neither Security Life nor St. Paul raised such error on prior appeal, pre-judgment interest was affirmed on appeal. OCGA § 9-11-60 (h); *Security IV*, supra.

Under the June 13, 1996 judgment for attorney fees and expenses of litigation, this unsatisfied judgment awarded the Clarks $306,290.98 in attorney fees and litigation expenses under OCGA § 9-15-14. *Security I* through *Security V*. At Security Life's request, the $160,000 settlement payments of co-defendants Samuel Corey and Brokerage Resource, Inc. were set off against such judgment, leaving a principal amount of $146,290.98 and interest at 12 percent per annum from June 13, 1996. See OCGA §§ 7-4-12; 9-12-10; 9-13-75; 13-7-1; 23-2-76.

Such ancillary award of litigation expenses was coincident to, and not in addition to, the jury's award of litigation expenses and prior court-awarded attorney fees and expenses of litigation. On August 6, 1996, the trial court entered a new judgment that subsumed the previous awards of attorney fees and expenses of litigation under OCGA § 9-15-14, as sanction, or by jury award. Because the recovery of the RICO claim authorized the recovery of all litigation expenses, the August 6, 1996 judgment read:

> The court concludes, and the Plaintiffs agree, that they are not entitled to multiple recoveries of litigation expenses and attorney's fees. Therefore, the ancillary award of litigation expenses, including attorney's fees, entered on June 13, 1996, exists coincident with, and not in addition to, the amount of litigation expenses and attorney's fees awarded in this final judgment. IT IS THEREFORE ORDERED THAT, upon full payment and satisfaction of this final judgment, all three prior orders of this Court awarding litigation expenses, including attorney's fees, to the Plaintiffs shall be deemed fully paid and satisfied, and the Clerk shall note upon the record.

However, under the August 6, 1996 judgment, Security Life never paid such attorney fees, and *Security VI* reversed the amount of attorney fees awarded by the jury and ordered a new trial on those damages. Thus, the June 13, 1996 judgment is no longer subsumed, because Security Life never paid the attorney fees under the August

6, 1996 judgment. Consequently, there remains a balance due of $146,290.98 of principal as well as interest of $111,485.75 through October 18, 2002.[2]

The Clarks set off the $250,000 settlement of Insurers Administrative Corporation against the June 13, 1996 judgment. OCGA §§ 9-13-75; 13-7-1; 23-2-76. Thus, after October 31, 2002, a balance on that judgment of $8,401.97 remained plus interest. Therefore, on October 31, 2002, no further set-offs against the fraud damages of $4,073,000 remained, which exceeded the pre-judgment demand.

Pre-judgment interest to August 6, 1996, in the amount of $374,792.10 as found by the trial court was authorized by OCGA § 51-12-14. The plaintiffs had the right to determine which judgments it would set off settlements against.

Security Life relies upon *Restina v. Crawford*, 205 Ga. App. 887 (424 SE2d 79) (1992). *Restina v. Crawford*, supra, involved a pre-verdict agreement between the parties, requiring that prepaid medical expenses be set off against the judgment and such set-off alone caused the settlement demand to be greater than the judgment and prevented the award of pre-judgment interest. Such opinion holds that the judgment and not the verdict is used to determine whether or not the settlement demand has been equaled or exceeded after set-off of prior settlements. OCGA § 51-12-14 (d) states clearly and unambiguously that "[i]nterest shall be made a part of the judgment upon presentation of evidence to the satisfaction of the court that this Code section has been complied with and that the verdict of the jury or the award by the [trial] judge trying the case without a jury is equal to or exceeds the amount claimed in the notice." The clear intent of the General Assembly in using the words "the verdict of the jury or award by the trial judge trying the case without a jury" was not to require the judgment to equal or exceed the demand to authorize pre-judgment interest, because the word "judgment" is not used either for the verdict or the award. The General Assembly was aware that either a jury verdict or an award by the trial court could be reduced by set-offs by the settlements of other tortfeasors, or voluntary payments by the tortfeasor, which would defeat the intent of the statute to punish the defendant who went to trial instead of settling like the other tortfeasors. Further, the purpose of the legislation to force settlements and to make trials costly was undermined by such construction.

---

[2] Principal due of $146,290.98 at 12 percent per annum or $48.0956646575342465734247 per day from June 13, 1996, until October 18, 2002, for a total principal and interest of $258,401.97. Such sum plus the general damages exceeded the $4,000,000 in the settlement demand. OCGA § 9-15-14.

The Unliquidated Damages [Interest] Act makes available to an injured party a coercive tool to offset injury and financial loss by encouraging a tortfeasor to make amends for his injurious conduct by making immediate payment short of litigation. If the tortfeasor does not take advantage of the opportunity to make his victim whole, the statute imposes a penalty, in effect, by authorizing the victim of the tort to collect damages in the form of interest from the time of the injury until the time the unliquidated damages become certain by verdict of the jury. As we view the intent of the statute, that award of interest from the time of injury to the date of judgment fulfills the purpose of the statute. This is independent of the jury's determination of an undifferentiated monetary verdict based upon the tort. While this jury verdict determines the amount of the pre-judgment interest, the pre-verdict interest is not a factor that is considered by the jury, nor should it form a part of the tortious injury.

*Williams v. Runion*, 173 Ga. App. 54, 60 (5) (325 SE2d 441) (1984) (determining whether post-judgment interest could be collected on an award of pre-judgment interest, i.e., interest upon interest). Therefore, to the extent *Restina v. Crawford*, supra, requires that set-offs of prior settlements with other joint tortfeasors must be considered in determining if the demand has been equaled or exceeded for the imposition of pre-judgment interest, such language in *Restina v. Crawford*, supra, is hereby disapproved.

The jury verdict award of damages for fraud of $4,073,000 was incorporated by reference into the original August 6, 1996 judgment, which was affirmed by *Security V* and *Security VI*.[3]

2. Security Life contends that the trial court erred in adding interest to the award before considering whether the August 6, 1996 judgment was greater than the demand for purposes of OCGA § 51-12-14. We do not agree.

For purposes of determining the judgment after the set-off, the trial court added the accrued interest from the June 13, 1996 judgment through October 31, 2002, before applying the set-off on that date in the subsequent judgment on remand. Under OCGA § 9-13-75, Security Life had to move the trial court to set off one judgment against another, because the court must order the set-off and the set-off becomes effective only upon entry of the order. *Pinkerton & Laws, Inc. v. Macro Constr.*, 226 Ga. App. 169, 171-172 (4) (485 SE2d 797) (1997); *Payne v. Jones & Kolb*, 190 Ga. App. 62, 64 (1) (378 SE2d 467)

---

[3] *Security V*, supra, 249 Ga. App. 18; *Security VI*, supra, 255 Ga. App. 14.

(1989). However, for the first time, on October 9, 2002, Security Life moved the trial court to set off the prior payments against the June 13, 1996 judgment. Until November 11, 2002, there was no order granting the set-off and ending the accrual of interest on this unpaid judgment. Under OCGA § 7-4-12, interest on a judgment continues to accrue at the rate of 12 percent per annum until paid. Such post-judgment interest was a damage that the plaintiffs recovered against Security Life and should be included in calculating the recovery against it for purposes of OCGA § 51-12-14, because post-judgment interest at 12 percent is intended to deter post-judgment delay, motions, and appeals and to bring finality to judgments or the defendant pays the price of protracted post-judgment litigation, as in this case. Therefore, OCGA § 51-12-14 must be construed to work in pari materia with OCGA § 7-4-12.

3. Security Life contends that the trial court erred in awarding post-judgment interest from the August 6, 1996 judgment rather than July 5, 2001, when the modified judgment was entered. We do not agree.

The August 6, 1996 judgment was partially reversed by *Security V*,[4] where the RICO and property interference claims were reversed but where "the appellate courts did not reverse the verdict for fraud, which had been specifically incorporated by reference in the original judgment" and which original judgment had a sufficient evidentiary and legal basis.[5] See also *CRS Sirrine v. Dravo Corp.*, 219 Ga. App. 301, 304 (2), 305, n. 3 (464 SE2d 897) (1995). Post-judgment interest accrues from the date of the first judgment where the original judgment of liability is upheld because there was both an evidentiary and legal basis for the judgment, but there was a reversal of separate portions of the judgment. Id. at 304.

4. Security Life has taken the position that the amount of the indemnity owed by it to St. Paul may be affected by the outcome of this appeal. Under OCGA § 10-7-42, the rights of sureties and principals are controlled:

> [i]f the payment [by a surety] was made after judgment and the principal had notice of the pendency of the action against the surety, the amount of such judgment shall be conclusive against the principal as to the amount for which the surety was bound. If the payment was not made after judgment, the principal may dispute the validity of the pay-

---

[4] Supra, 249 Ga. App. 18.
[5] *Security VI*, supra, 255 Ga. App. 14, partially reversed the punitive damages and the jury award of attorney fees and litigation expenses for a new trial as to the amount of damages. The trial court's award of attorney fees and litigation expenses was affirmed.

ment as to the amount or as to the authority of the person to whom it was paid.

Id. When the judgment was paid by the surety, St. Paul, and when the principal, Security Life, had notice of the action against the surety, the surety's payment of the judgment is conclusive of the amount and the surety shall recover such sum from the principal. See OCGA § 10-7-42; *M-Pax, Inc. v. Dependable Ins. Co.*, 176 Ga. App. 93, 95 (5) (335 SE2d 591) (1985).

*Judgment affirmed. Johnson, P. J., Ruffin, P. J., Barnes, Miller, Ellington, Phipps, Mikell and Adams, JJ., concur. Smith, C. J., concurs in judgment only. Andrews, P. J., and Blackburn, P. J., dissent.*

ANDREWS, Presiding Judge, dissenting.

Because I believe that *Restina v. Crawford*, 205 Ga. App. 887 (424 SE2d 79) (1992), was correctly decided and controls the issue of the amount to be used in determining whether the Clarks are entitled to prejudgment interest under the Unliquidated Damages Interest Act, and that postjudgment interest was improperly calculated from August 6, 1996, I must respectfully dissent.

*Prejudgment Interest*

The majority bases the affirmance of the award of prejudgment interest on resurrection of the June 1996 order awarding attorney fees to the Clarks. This is the mechanism by which the amount due the Clarks after set-offs of amounts paid by other defendants reaches the amount of their $4,000,000 demand made on Security Life before trial under OCGA § 51-12-14. "These provisions of OCGA § 51-12-14, setting forth the manner in which a plaintiff can recover prejudgment interest on unliquidated damages in a tort suit, are in derogation of common law, [cits.], and therefore must be strictly construed." *Resnik v. Pittman*, 203 Ga. App. 835-836 (418 SE2d 116) (1992).

In *Restina v. Crawford*, the issue was whether the verdict or the judgment entered on it controlled entitlement to prejudgment interest. The defendant argued that the legislature intended for the judgment to be the operative amount and that the word "verdict" should be construed to mean "corrected verdict" or the judgment which is entered after the appropriate set-offs. This Court held that:

"It is elementary that '(i)n all interpretations of statutes, the courts shall look diligently for the intention of the (legislature).' OCGA § 1-3-1." *Roman v. Terrell*, 195 Ga. App. 219, 221 (3) (393 SE2d 83) (1990). The legislative intent is determined from a consideration of the entire statute. " 'The construction of language and words used in one part of the stat-

ute must be in the light of the legislative intent as found in the statute as a whole. . . . Where there is an apparent conflict between different sections of the same statute, the duty of a court is to reconcile them, if possible, so as to make them consistent and harmonious with one another. . . . If they cannot be so reconciled the one which best conforms to the legislative intent must stand. . . .' (Cit.)" *Board of Trustees v. Christy*, 246 Ga. 553, 554 (1) (272 SE2d 288) (1980). "The Unliquidated Damages (Interest) Act makes available to an injured party a coercive tool to offset injury and financial loss by encouraging a tortfeasor to make amends for his injurious conduct by making immediate payment short of litigation. If the tortfeasor does not take advantage of the opportunity to make his victim whole, the statute imposes a penalty, in effect, by authorizing the victim of the tort to collect damages in the form of interest from the time of the injury until the time the unliquidated damages become certain by verdict of the jury. As we view the intent of the statute, that award of interest from the time of injury to the date of judgment fulfills the purpose of the statute." *Williams v. Runion*, 173 Ga. App. 54, 60 (5) (325 SE2d 441) (1984). Based on legislative intent, we conclude that where a judgment is less than the verdict due to setoffs for payments already received by victims from tortfeasors, OCGA § 51-12-14 should be construed to entitle a plaintiff to interest only if the amount of the post-setoff judgment is equal to or exceeds the amount of the settlement demand. Although we have found no cases directly on point, this conclusion is supported by *Bullman v. Tenneco Oil Co.*, 197 Ga. App. 408 (398 SE2d 311) (1990).

Id. at 888-889. The majority cites no authority for its conclusion that *Restina* was wrongly decided and does not resolve the apparent conflict between OCGA § 51-12-14 (a) and (d), as does *Restina*. It should also be noted that, following *Restina*, decided in 1992, the legislature amended OCGA § 51-12-14, without addressing this conflict. Ga. L. 2000, pp. 1589, 1608, § 3 (290). The legislature is presumed to act with full knowledge of existing law and with reference to it. *Dept. of Transp. v. American Ins. Co.*, 268 Ga. 505, 507 (1), n. 10 (491 SE2d 328) (1997); *Abend v. Klaudt*, 243 Ga. App. 271, 275 (531 SE2d 722) (2000). Although aware of this Court's interpretation of OCGA § 51-12-14 in *Restina*, the legislature did not opt to make any changes in the statute to do what the majority has done here.

Apparently aware of the issue posed by *Restina*, the trial court, in its judgment on remand at issue here, used the June 1996 order to

boost the amount of the judgment to the amount of the Clarks' demand.

That June 1996 order awarded $306,290.98 as

> reasonable and necessary attorney's fees for opposing Security's original second defense and counterclaim, . . . subject to the following set-off. It is undisputed that the plaintiffs have settled with Security's co-defendants Samuel C. Corey, Jr. and the Brokerage Resource, Inc. for the sum of $160,000. Security points out that an award of attorney's fees and expenses of litigation is a money judgment, for which it is entitled to take a credit for any sums previously received by the plaintiffs in settlement. Therefore, the award of attorney's fees and expenses herein is reduced by $160,000, the amount of the settlement reached between the plaintiffs and the co-defendants Corey and Brokerage Resource. It is therefore ordered and adjudged that the plaintiffs have and recover against Security the sum of $146,290.98.

The final judgment entered by the trial court on the Clarks' RICO claim on August 6, 1996, however, stated that, because the jury awarded $792,902.08 as attorney fees and expenses, and

> [i]n view of the Plaintiffs' election to take judgment on their RICO claims, they are entitled to recover all their reasonable expenses of investigation and litigation, including attorney's fees, in both the trial and appellate courts. The specific amount [($146,290.98)] previously awarded by this court as litigation expenses and attorney's fees pursuant to OCGA § 9-15-14 is completely subsumed in the amount awarded in this final judgment as the Plaintiffs' overall expenses of investigation and litigation, including attorney's fees. The court concludes, and the Plaintiffs agree, that they are not entitled to multiple recoveries of litigation expenses and attorney's fees. Therefore, the ancillary award of litigation expenses, including attorney's fees, entered on June 13, 1996, exists coincident with *and not in addition to*, the amount of litigation expenses and attorney's fees awarded in this final judgment.

(Emphasis in original.)

That RICO judgment was reversed by this Court in *Security Life Ins. Co. v. Clark*, 229 Ga. App. 593 (494 SE2d 388) (1997) (*Security I*). As reemphasized in *Security Life Ins. Co. v. Clark*, 273 Ga. 44 (535

SE2d 234) (2000) (*Security IV*), the RICO claim was fatally flawed and "the Court of Appeals' ruling in *Security III* [(*Security Life Ins. Co. v. Clark*, 239 Ga. App. 690 (521 SE2d 434) (1999)] reinstating the trial court's judgment on the Clarks' RICO claim is reversed." *Security IV*, supra at 48. *St. Paul Fire &c. Ins. Co. v. Clark*, 255 Ga. App. 14 (566 SE2d 2) (2002) (*Security VI*), further stated that "[a]ll agree that after that judgment's appellate journey, the Clarks clearly *lost their RICO judgment* and the directed verdict holding that Security wrongfully interfered with their property rights by wrongfully rescinding their insurance coverage." (Emphasis supplied.) Id. at 16. Following remand of *Security Life Ins. Co. v. Clark*, 249 Ga. App. 18 (547 SE2d 691) (2001) (*Security V*), on July 5, 2001, the trial court entered the Modified Judgment on the fraud portion of the verdict form, which was, as to compensatory damages, affirmed in *Security VI* (*St. Paul v. Clark*), supra at 16 (1). That Modified Judgment included compensatory damages of $4,073,000; attorney fees and expenses of $792,902.08; prejudgment interest of $374,792.10; and punitive damages of $1,500,000. The subtotal of these ($6,740,694.18) was then reduced by the previously paid settlements of $410,000 (Corey/Brokerage Resource, $160,000 and Insurers Administrative Corporation, $250,000).

*Security VI* (*St. Paul v. Clark*), while concluding that liability for litigation expenses under OCGA § 13-6-11 need not be relitigated, further held that "the Clarks were entitled only to attorney fees attributable to the claim on which they prevailed, i.e., the fraud claim. [*David C. Joel, Attorney at Law, P.C. v. Chastain*, 254 Ga. App. 592, 597-598 (4) (562 SE2d 746) (2002)]; [cits.]" *Security VI* (*St. Paul v. Clark*), supra at 24 (5) (a). As a result, the Clarks have the burden of proving the amount of attorney fees and expenses attributable solely to the fraud claim on which they prevailed and Security's defense of that claim, including the counterclaim that was the subject of the June 1996 order. *Premier Cabinets v. Bulat*, 261 Ga. App. 578 (583 SE2d 235) (2003); *David C. Joel, Attorney at Law, P.C. v. Chastain*, supra.

Considering only the compensatory damages of $4,073,000 awarded by the Modified Judgment, which survived *Security VI* (*St. Paul v. Clark*), and even considering the $306,290.98 granted in the June 1996 order, after deducting the $410,000 paid by co-defendants, the Clarks' recovery is still only $3,969,290.98, or less than their demand. Therefore, I do not believe they were entitled to recover prejudgment interest. *Restina v. Crawford*, supra; see also *Wolf Camera v. Royter*, 253 Ga. App. 254, 261-262 (558 SE2d 797) (2002) (citing *Bullman v. Tenneco Oil Co.*, supra); *Ga. Tile Distrib. v. Zumpano Enterprises*, 205 Ga. App. 487, 489 (2) (422 SE2d 906) (1992); *Corr v.*

*Aaron Rents*, 136 Ga. App. 643, 644 (222 SE2d 150) (1975). As stated in *Restina*,

> this conclusion is supported by *Bullman v. Tenneco Oil Co.*, [supra]. In *Bullman*, the jury's verdict of $400,000 was offset by a $7,000 settlement with one of the defendants prior to trial, and a judgment was entered in favor of plaintiff for $393,000. This court, in determining whether plaintiff was entitled to interest because the amount of the judgment exceeded her individual settlement demands against the various defendants, considered the amount of the judgment rather than the pre-setoff verdict to be the operative amount. This case illustrates that this court has considered the amount of the judgment to be the operative amount in determining whether interest should be allowed. Consequently, we find no error in the trial court's ruling that appellant was not entitled to interest pursuant to OCGA § 51-12-14.

*Restina v. Crawford*, supra at 889.

### Postjudgment Interest

(1) The trial court awarded postjudgment interest of $112,110.99 on the June 1996 sanctions order, adding this amount to the fraud compensatory damages before determining whether prejudgment interest was available under the Unliquidated Damages Interest Act. Absent this amount, the judgment would not bear prejudgment interest. This was improper for two reasons.

First, the order of June 1996, standing alone, is not a "judgment" to which the provisions of OCGA § 7-4-12 apply. OCGA § 9-11-54 (a) defines the term "judgment" as including "a decree and any order from which an appeal lies." OCGA § 7-4-12 provides for interest on all "judgments." The June 1996 order is not one that is appealable absent a certificate of immediate review, OCGA § 5-6-34 (a) and (b). Nor was it a "judgment" until subsumed in the August 6, 1996 RICO judgment. See *Crolley v. Haygood Contracting*, 207 Ga. App. 434, 436 (2) (429 SE2d 93) (1993).

Second, imposing interest on interest is not allowed in Georgia. Here, the trial court included the postjudgment interest on the June 1996 order to the compensatory damages before calculating the amount subject to prejudgment interest, resulting in interest on interest.

> Under OCGA § 9-12-10, "(i)n all cases where judgment is obtained, the judgment shall be entered for the principal

sum due, with interest, provided the claim upon which it was obtained draws interest. No part of the judgment shall bear interest except the principal which is due on the original debt." "(T)his . . . statute forbids post-judgment interest except on the principal or original debt and expressly excludes pre-judgment interest, where authorized, to be included in the amount used to compute post-judgment interest." *Dept. of Transp. v. Consolidated Equities Corp.*, 181 Ga. App. 672, 677 (353 SE2d 603) (1987).

*Groover v. Commercial Bancorp*, 220 Ga. App. 13, 16 (1) (b) (467 SE2d 355) (1996). See also *Lott v. Arrington & Hollowell, P.C.*, 258 Ga. App. 51, 55 (3) (572 SE2d 664) (2002); *Barbush v. Oiler*, 158 Ga. App. 625, 627 (281 SE2d 359) (1981).

(2) The trial court also awarded postjudgment interest to the compensatory fraud damages computed from the date of the entry of the RICO judgment on August 6, 1996, instead of from the entry on July 5, 2001, of the Modified Judgment on fraud, as I believe is required.

In *CRS Sirrine v. Dravo Corp.*, 219 Ga. App. 301 (464 SE2d 897) (1995), this Court looked to analogous federal statutes and case law to determine that

where more than one judgment has been entered in a case, the decision of whether postjudgment interest should run from entry of the original or second judgment "turns on the degree to which the original judgment was upheld or invalidated on appeal." [Cits.] "In general, where a first judgment lacks an evidentiary or legal basis, post-judgment interest accrues from the date of the second judgment; where the original judgment is basically sound but is modified on remand, post-judgment interest accrues from the date of the first judgment." [Cit.]

Id. at 304 (2).

Application of this standard is fact specific and cases may fall between two extremes — the first where the original judgment is reinstated in its entirety by the appellate court, with postjudgment interest clearly accruing from the date of the original judgment, and the other where the original judgment is reversed completely and postjudgment interest does not accrue until entry of the second judgment.

Here, the original RICO judgment was found to lack a legal basis in the Clarks' situation; judgment was entered on remand on the separate fraud cause of action included in the verdict form on July 5,

2001; compensatory damages were reduced by two-thirds; and liability for and the amount of punitive damages, along with the amount of attorney fees and expenses attributable to the fraud claim, must be retried. This situation more closely aligns with the second extreme. Cf. *Crolley v. Haygood Contracting*, supra. There, Haygood sued both Cherokee Falls Investments, Inc. and William Crolley for money owed pursuant to a construction contract and partial summary judgment was granted against both defendants. While Crolley's right to partial summary judgment was affirmed by *Crolley v. Haygood Contracting*, 201 Ga. App. 700 (411 SE2d 907) (1991), on remand, Crolley was required to select one of the two defendants against whom judgment was entered and postjudgment interest ran only from this second judgment.

Here, also, I believe that postjudgment interest runs only from the second judgment, on the fraud claim, entered in 2001.

I am authorized to state that Presiding Judge Blackburn joins in this dissent.

DECIDED OCTOBER 3, 2003 —

*Sutherland, Asbill & Brennan, William D. Barwick, Teresa W. Roseborough, Carla W. McMillian*, for appellant.

*Porter, Orrison & Doster, J. Alexander Porter, King & Spalding, Byron Attridge, Benjamin F. Easterlin IV, S. Stewart Haskins II*, for appellee.